
# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAX BRADFORD SUITER,<br><br>    Debtor. | Case No. 15-00083<br>Chapter 7 |
| THOMAS C. PEARSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MAX BRADFORD SUITER, et al.,<br><br>    Defendants. | Adv. Pro. No. 15-90020<br><br>Re: Dkt. No. 78 |

### MEMORANDUM OF DECISION ON
### MOTION FOR PARTIAL SUMMARY JUDGMENT
### ON COUNTS 127 AND 128 OF THIRD AMENDED COMPLAINT

    This adversary proceeding arises out of a construction contract between Plaintiff Thomas C. Pearson and his wife, as owners, and Defendant Canaan Construction, Ltd. ("Canaan Construction"). Defendant Max Bradford Suiter ("Suiter") is the owner of Canaan Construction. The remaining defendants

(Canaan Builders, LLC, 1122 Makepono Street, LLC, and Raymond T. Suiter) are affiliated with Suiter.

The Third Amended Complaint consists of 171 counts and 1,380 numbered paragraphs of allegations. The parties have filed a blizzard of motions seeking decisions on portions of the complaint. The motion before me now is one of those motions.

For the following reasons, I will grant the motion in part.

## FACTS[1]

Suiter is the president, sole officer, and principal responsible managing employee of Canaan Construction.[2]

Pearson entered into a contract dated September 17, 2012, with Canaan Construction for the remodeling and construction of a home.[3] Pearson alleges that Canaan Construction breached the contract and that Canaan Construction and

---

[1] LBR 7056-1 requires a party filing a motion for summary judgment to file "a separate concise statement" of undisputed facts. The opponent must file its own separate document that either accepts the movant's statement or identifies the disputed material facts.
    Pearson complied with this rule. Suiter filed a separate statement, but it does not respond to Pearson's statement at all. Instead it lists additional facts. Because Suiter did not indicate which, if any, of the facts it set forth by Pearson are accepted and which are disputed, my review of the motion has been more difficult than necessary.
    I could decide that Suiter has accepted all of the facts set forth in Pearson's statement. Instead, I have reviewed Suiter's declarations and exhibits and attempted to determine which facts are disputed.

[2] Dkt. # 79-8.

[3] Dkt. # 108 at 2.

2

Suiter defrauded him in numerous respects, causing him to suffer substantial damages. Canaan Construction and Suiter contend that it was Pearson who breached the contract and who is liable to them for damages.

On January 22, 2015, Suiter filed a chapter 7 bankruptcy petition. This is his second trip to the bankruptcy court; he filed a prior chapter 7 petition in 2003 and received a discharge.[4]

In this adversary proceeding, Pearson asserts a wide variety of claims against Suiter. The counts with which this motion deals contend that the court must deny Suiter's discharge because he allegedly transferred assets with the intent to hinder or defraud creditors satisfying section 727(a)(2)(A), and uttered false oaths in the bankruptcy case satisfying section 727(a)(4)(A).

Suiter testified that when he received a paycheck from Canaan Construction and, after that company ceased doing business in June 2014, for work as a handyman, he would either cash the check or sign it over to his wife so she could deposit it in her checking account.[5] The trustee questioned Suiter about this practice during the meeting of creditors, asking, "[W]hy do you put it into her account?"[6] Suiter responded, "I – you know, my initial concern was that if the IRS

---

[4] *In re Suiter*, No. 03-00036 (Bankr. D. Hawaii filed January 7, 2003).

[5] Dkt. # 79-4 at 15.

[6] Dkt. # 3 79-5 at 8.

3

got funky with me, and they would, you know, garnish my accounts. So I just didn't want to have that happened, so."[7] The trustee followed up, asking, "[Y]ou wanted to safeguard it?" The debtor responded, "Yes."[8] The trustee pursued the matter further, saying "[S]o it couldn't get garnished." Suiter again responded, "Yes."[9]

Suiter and his attorney both have submitted declarations stating that, during meetings with the IRS in an attempt to resolve Suiter's tax liabilities, they told the IRS agents that Suiter did not have a personal bank account and that "I was depositing funds into an account owned solely by my wife."[10]

Pearson claims that Suiter made numerous false statements and omitted other facts in his sworn schedules and statement of affairs filed in the bankruptcy case and in his sworn testimony at his meeting of creditors. I will describe and address these contentions below.

## DISCUSSION

### I. Jurisdiction and Venue

The court has personal jurisdiction over the parties and jurisdiction of the

---

[7] *Id.*

[8] *Id.* at 9.

[9] *Id.*

[10] Dkt. # 169 at 2.

4

subject matter. The bankruptcy court has statutory and constitutional power to enter a final judgment on the claims stated in Counts 127 and 128. Venue is proper in this district.

## II. Standard for Summary Judgment

A party may move for summary judgment, identifying each claim or defense, or the part of each claim or defense, on which summary judgment is sought.[11] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] In making this determination, the court views the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party.[13]

## III. Discussion

### A. Pearson's Standing

Suiter argues that Pearson is not entitled to pursue an objection to discharge because he is not a creditor of Suiter. I will defer decision on this issue. Pearson's motion seeks partial summary judgment only and does not ask me to decide the entire dispute between Pearson and Suiter. Accordingly, the remainder of this

---

[11] Fed. R. Civ. P. 56(a).

[12] *Id.*

[13] *Sjurset v. Button*, 2015 WL 7873404, at *3 (9th Cir. Dec. 4, 2015).

5

decision may become inoperative if Suiter establishes that he does not owe Pearson any money.

B.   Section 727(a)(2)

Under section 727(a)(2)(A), the bankruptcy court may not grant a discharge if the debtor transferred "property of the debtor" within one year before he filed for bankruptcy with the intent to hinder, delay, or defraud creditors.[14] Courts construe section 727 "liberally in favor of debtors and strictly against parties objecting to discharge."[15] The plaintiff's reasons for objecting to discharge "must be real and substantial, not merely technical and conjectural."[16] The objector must prove its case by a preponderance of the evidence.[17]

Depositing paychecks into a bank account in the debtor's wife's name, and over which he has no control, in order to "diminish the amount of money creditors would be able to obtain from a judgment against him," violates section 727(a)(2)(A).[18]

---

[14] 11 U.S.C. § 727(a)(2)(A).

[15] *Retz v. Sampson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996)).

[16] *In re Chu*, 511 B.R. 681, 684 (Bankr. D. Haw. 2014)(citing *Commerce Bank and Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 137 (1st Cir. 1992)(quoting *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir.1934))).

[17] *Retz*, 606 F.3d at 1197.

[18] *In re Kontrick*, 295 F.3d 724, 736-37 (7th Cir. 2002).

6

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 228   Filed  02/16/16   Page 6 of 16

Suiter does not deny that, when he deposited his paychecks into his wife's account, he transferred "property of the debtor," and that these transfers occurred within one year before his bankruptcy filing. Suiter also does not attempt to contradict or explain away his testimony at the meeting of creditors that he did so in order to avoid a possible garnishment by the IRS. He says, however, that he and his attorney told the IRS about this practice. This testimony does not negate his intent to hinder the IRS. In the first place, Suiter does not say when he told the IRS that he was depositing his paychecks in his wife's account, so the practice could have been going on for some time before he made the disclosure. Further, despite disclosure, the fact that the money was in his wife's account would have made it more difficult for the IRS to garnish that account. It is much easier to garnish an account in the name of the debtor than it is to garnish an account in someone else's name, even if that account may hold funds belonging to the debtor. In other words, even if Suiter told the IRS about the deposits, his practice of stashing his money in his wife's account still hindered the IRS.

Pearson is therefore entitled to partial summary judgment on this issue.

C.   Section 727(a)(4)

Section 727(a)(4)(A) provides that the court may not grant a discharge if the debtor "knowingly and fraudulently in connection with the [bankruptcy] case . . .

7

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 228   Filed 02/16/16   Page 7 of 16

made a false oath or account . . . ."[19] To prevail on this claim, Pearson must prove four elements: "'(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'"[20]

Providing false information, or failing to provide required information, in the debtor's schedules or statement of financial affairs can be a false oath within the meaning of section 727(a)(4)(A).[21]

Although the text of section 727(a)(4)(A) does not mention a materiality requirement, judicial interpretations have imposed one. It is settled, however, that "[m]ateriality is broadly defined."[22] A relatively low standard of materiality is appropriate because the bankruptcy system depends heavily on accurate self-reporting by debtors. The potential for a denial of discharge helps to "insure that the trustee and creditors have accurate information without having to conduct costly investigations."[23]

---

[19] 11 U.S.C. § 727(a)(4)(A).

[20] *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010) (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)).

[21] *Kluge v. KHI/10223 Sepulveda, LLC (In re Kluge)*, 2013 WL 1459274, at *3 (B.A.P. 9th Cir. Apr. 10, 2013).

[22] *Fogal Legware of Switzerland, Inc., v. Wills (In re Wills)*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999).

[23] *Id.* at 63.

8

In general, "[a] false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property."[24] The omission need not relate to assets; omissions regarding income can also be material.[25]

The test of materiality is not limited to the dollar value of the undisclosed items. Therefore, "[a] false statement or omission may be material even if it does not cause direct financial prejudice to creditors."[26] This is not to say that value is irrelevant: the omission of an asset that is of little or no value, or that would not be property of the estate, might not be material. "However, an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the estate."[27] Stated another way, a false statement or omission is material unless it "has no impact on a bankruptcy case . . . ."[28]

---

[24] *Id.* at 62.

[25] *See e.g. In re Kluge*, 2013 WL 1459274, at *4 (B.A.P. 9th Cir. Apr. 10, 2013)(citation omitted).

[26] *Id.* at 63.

[27] *Id.*

[28] *Id.*

9

A debtor "knowingly" makes a false oath "if he or she acts deliberately and consciously," rather than carelessly or recklessly.[29]

In order to establish that the debtor made a false oath "fraudulently," the objector must show that the debtor "made them with the intention and purpose of deceiving the creditors . . . ."[30] Circumstantial evidence is admissible to prove fraudulent intent. The debtor's reckless indifference to the truth can support an inference of fraudulent intent.[31]

I now must apply these definitions to each of the statements which Pearson identifies.

First, Pearson claims that Suiter made three different statements about the date on which Canaan Construction ceased operations. In his statement of financial affairs, Suiter swore that the "ending date" of Canaan Construction was "5-2014."[32] But at his meeting of creditors, Suiter testified that "end of June is when we officially just stopped."[33] Later, Suiter agreed that "the company still

---

[29] *Retz*, 606 F.3d at 1198.

[30] *Roberts*, 331 B. R. at 884.

[31] *Khalil v. Dev. Sur. & Indemn. Co. (In re Khalil)*, 379 B.R. 163, 173-75 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009).

[32] Dkt. # 79-3 at 11.

[33] Dkt. # 79-4 at 13.

10

exists."[34] There is no evidence that the third statement is false: a company can continue to exist as a legal entity long after it ceases operations. The discrepancy between the first and second statements suggests that at least one of them is false, but there is no evidence that the question whether Canaan Construction ceased operations in May or June of 2014 had any impact on the administration of his bankruptcy estate. Therefore, those statements are not material. Similarly, there is no evidence that the discrepancy was deliberate as opposed to careless, so Pearson has not shown that the statements were "knowingly" false. Finally, there is no evidence that Suiter gave his varying testimony about the "ending date" of Canaan Construction with the intent to deceive anyone. Therefore, partial summary judgment on this contention must be denied.

Second, Pearson points out that, in his schedule I, Suiter swore that he was self-employed on the date of his bankruptcy filing (in January 2015) and had been self-employed for two months. Pearson claims that, in truth, Suiter was employed by Canaan Builders at that time. At his meeting of creditors, Suiter testified that he worked as an independent contractor for Canaan Builders beginning in November 2014 and did not become an employee of that company until March 2015. Pearson argues that this cannot be true because Suiter became the "Principal Responsible

---

[34] Dkt. # 79-6 at 8-9.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 228   Filed 02/16/16   Page 11 of 16

Managing Employee" of Canaan Builderson July 23, 2014.[35] Therefore, Suiter's statement about the commencement date of his employment with Canaan Builders may have been false. But Pearson offers no evidence that this statement had any effect on the administration of Suiter's bankruptcy case, that Suiter knew the statement was false, or that Suiter intended to deceive anyone. Therefore, partial summary judgment on this contention must be denied.

Third, Pearson argues that Suiter stated in schedule I that his wife's income was only $350 per month but said in his meeting of creditors that she makes about $1,000 per month. Suiter claims that he mis-spoke during the meeting of creditors, that her income had fallen, and that the figure listed in schedule I was correct.[36] Pearson offers no evidence that the statements about Suiter's wife's income had any effect on the administration of Suiter's bankruptcy case, that Suiter knew either statement was false, or that Suiter intended to deceive anyone. Pearson also points out that, in his 2003 bankruptcy case, Suiter stated that his wife earned $1,973.50. This proves almost nothing; one cannot reasonably infer that Mrs. Suiter's income did not change over a twelve year period, especially where that period included the worst economic downturn in the last sixty years. Therefore, partial summary

---

[35] Dkt. # 79-8 at 1.

[36] Dkt. # 108 at 3.
12
U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 228   Filed 02/16/16   Page 12 of 16

judgment on this contention must be denied.

Fourth, Pearson claims that Suiter failed to disclose rental income in his statement of affairs. But according to Suiter's unrebutted declaration, the properties which generated the income did not belong to Suiter, but rather to his wife's trust.[37] It is true that Suiter benefitted from that income because the rental proceeds were used in part to pay mortgages on which Suiter was liable, but that does not mean that the proceeds of property which he did not own were "income" which Suiter had to report in his bankruptcy schedules. Thus, Pearson has failed to show that this omission amounted to a false statement, let alone one that Suiter made knowingly or with intent to deceive. Therefore, partial summary judgment on this contention must be denied.

Fifth, Pearson points out that Suiter failed to disclose in his schedules and statement of affairs that he had been depositing his checks into his wife's bank account. Pearson claims that Suiter should have disclosed this in response to question 7 of the statement of financial affairs, which requires debtors to disclose gifts to family members of more than $200. Suiter responds to this only indirectly, saying that the funds in his wife's account were used for "the payment of joint

---

[37] *Id.*

13

household expenses and debts for which I am personally liable."[38] At his meeting of creditors, in response to a leading question, Suiter agreed that these payments were basically gifts to his wife.[39] Assuming it is true that all of the funds in the account were used for household expenses (and there is no evidence to the contrary), Suiter was probably incorrect when he characterized the payments as gifts to his wife.[40] Therefore, there is a genuine dispute of fact concerning whether the statement was false. Further, there is no evidence that Suiter knew that it was false or intended to deceive anyone, or that the false statement had any adverse effect on the administration of his bankruptcy case. Therefore, partial summary judgment on this point should be denied.

Sixth, Pearson points out that, in his 2003 bankruptcy case, Suiter indicated that he had a pension account with a value of $8,200, but no pension plan was listed in his 2015 bankruptcy filing. Suiter testifies in his declaration that he cashed out his pension plan in the twelve year period between the two bankruptcy cases. Pearson offers no evidence to the contrary. Thus, Pearson has offered no evidence

---

[38] Dkt. # 108 at 4.

[39] Dkt. # 79-4 at 10.

[40] Arguably, Suiter should have disclosed these payments in response to question 10.a of the statement of financial affairs, but the record does not indicate whether the transfers to the wife's bank account were made "[I]n the ordinary course of the . . . financial affairs of the debtor . . . ." Therefore summary judgment is still unwarranted.

14

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 228   Filed  02/16/16   Page 14 of 16

that Suiter made a false statement in this respect and partial summary judgment on this point must be denied.

Seventh, Pearson argues that Suiter failed to disclose the assets of Canaan Construction. Suiter is obligated to identify and value all assets he owns, including his ownership of separate legal entities, but he is not required to list or value the assets of those separate legal entities. In this case, Suiter disclosed his ownership of Canaan construction and claimed that his ownership interest in the company was worthless. There is no evidence that these statements were false. Thus, partial summary judgment must be denied.

Finally, Pearson argues that Suiter made a false statement when he did not provide any information in response to question 10.b of the statement of financial affairs, which requires the debtor to "[L]ist all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary."[41] The parties agree that, in 2008, Suiter and his wife transferred several properties to a trust of which Suiter was a beneficiary and Mrs. Suiter was the settlor. Because Suiter was apparently not the settlor of the trust, the trust is not a "self-settled trust" in the ordinary meaning of that phrase. Because neither party has provided a copy of the

---

[41] Dkt. # 79-3 at 17.

15

trust agreement, it is impossible to determine on this record whether the trust is a "similar device" within the meaning of the statement of financial affairs. Therefore, for the time being, partial summary judgment must be denied.

## CONCLUSION

Partial summary judgment is GRANTED in favor of Pearson on the section 727(a)(2)(A) claim, subject to a later determination that Pearson has standing as a creditor. Pearson's motion is DENIED in all other respects.

## END OF ORDER

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 228   Filed  02/16/16   Page 16 of 16