Date Signed:
February 16, 2016



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAX BRADFORD SUITER,<br><br>    Debtor. | Case No. 15-00083<br>Chapter 7 |
| THOMAS C. PEARSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MAX BRADFORD SUITER, et al.,<br><br>    Defendants. | Adv. Pro. No. 15-90020<br><br>Re: Dkt. No. 148 |

### MEMORANDUM OF DECISION ON
### MOTION FOR PARTIAL SUMMARY JUDGMENT
### ON COUNT 35 OF THIRD AMENDED COMPLAINT
### (THE CABINET CLAIMS)

This adversary proceeding arises out of a construction contract between

Plaintiff Thomas C. Pearson and his wife, as owners, and Defendant Canaan

Construction, Ltd. ("Canaan Construction"). Defendant Max Bradford Suiter

("Suiter") is the owner of Canaan Construction. The remaining defendants

(Canaan Builders, LLC, 1122 Makepono Street, LLC, and Raymond T. Suiter) are affiliated with Suiter.

The Third Amended Complaint consists of 171 counts and 1,380 numbered paragraphs of allegations. The parties have filed a blizzard of motions seeking decisions on portions of the complaint. The motion before me now is one of those motions.

For the following reasons, I will grant (or recommend that the district court grant) the motion in part.

## FACTS[1]

Suiter is the president, sole officer, and principal responsible managing employee of Canaan Construction.[2]

Pearson entered into a contract dated September 17, 2012, with Canaan Construction for the remodeling and construction of a home.[3] Among other

---

[1] LBR 7056-1 requires a party filing a motion for summary judgment to file "a separate concise statement" of undisputed facts. The opponent must file its own separate document that either accepts the movant's statement or identifies the disputed material facts.
  Pearson complied with this rule. Suiter filed a separate statement, but it does not respond to Pearson's statement at all. Instead it lists additional facts. Because Suiter did not indicate which, if any, of the facts it set forth by Pearson are accepted and which are disputed, my review of the motion has been more difficult than necessary.
  I could decide that Suiter has accepted all of the facts set forth in Pearson's statement. Instead, I have reviewed Suiter's declarations and exhibits and attempted to determine which facts are disputed.

[2] Dkt. # 149-2.

[3] Dkt. # 149-4.

2

things, the contract specifications required Canaan to fabricate and install a "complete cabinet package."[4] The cabinets were to be built at Canaan Construction's warehouse and then installed in the home.[5]

Section A.3.15.1 of the contract provides that Canaan Construction "shall provide [Pearson] access to the Work in preparation and progress wherever located."[6]

The contract provided that Canaan Construction would submit monthly applications for payment ("Pay Apps").[7] The Pay Apps were to be based on "the percentage completion of each portion of the Work and "materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by [ Pearson], suitably stored off-site the site at a location agreed upon in writing) . . . ."[8] The contract further provided that, "in taking action on [Canaan Construction's] applications for payment, [Pearson] shall be entitled to rely on the accuracy and completeness of the information provided furnished by [Canaan Construction] and shall not be

---

[4] *Id.* at 12-13.

[5] Dkt. # 149-1 at 4.

[6] Dkt. # 149-4 at 7.

[7] Dkt. # 149-4 at. 4.

[8] *Id.*

3

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 229   Filed 02/16/16   Page 3 of 12

deemed to have made a detailed examination, audit or arithmetic verification of the documentation submitted . . . or other supporting data; to have made exhaustive or continuous on-site inspections; or to have made examinations to ascertain how or for what purposes [Canaan Construction] has used amounts previously paid on account of the agreement."[9]

Each Pay App included a statement signed by Suiter for Canaan Construction that "the undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the work covered by this Application for Payment has been completed in accordance with the Contract Documents . . . ."[10] Pearson relied on the representations in each Pay App (as the contract provided) when he paid Canaan Construction.[11]

Suiter, on behalf of Canaan Construction, delivered to Pearson several Pay Apps representing that portions of the cabinet work had been completed.[12]

| Pay App | Date | Cabinet Work Done During Period | Cumulative Cabinet Work Done |
|---|---|---|---|
| 5 | 2/21/13 | $25,612 | $25,612 |
| 7 | 4/24/13 | $25,000 | $50,612 |

---

[9] *Id.* at 3.

[10] *Id.* at 3; Dkt. # 149-10; 149-12; 149-14; 149-16; and 149-18.

[11] Dkt. # 149-1 at 5-11.

[12] Dkt. # 149-10; 149-12; 149-14; 149-16; and 149-18.

4

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 229   Filed 02/16/16   Page 4 of 12

| 10 | 7/22/13 | $10,000 | $60,612 |
| 11 | 8/23/13 | $13,000 | $73,612 |
| 13 | 10/21/13 | $8,150 | $81,762 |

Pearson paid the amounts requested in Pay App 5, 7, 10, 11, and 13.[13]

Each Pay App represented that the total scheduled value of the complete cabinet package was $90,000. Thus, Pay App 13 represented that Canaan Construction had completed slightly more than 90% of the work on the cabinet package.[14]

This representation was false. The cabinets were never installed at the project or delivered to Pearson. It is not clear that any cabinets were built; Pearson repeatedly sought permission to inspect the cabinets at the Canaan Construction warehouse, but Suiter consistently refused. Suiter says he cannot recall these conversations and that Pearson could not have entered the warehouse due to OSHA and safety regulations. He does not deny Pearson's testimony, does not identify the regulations that precluded Pearson from entering the warehouse, does not explain why he could not have satisfied those regulations by (for example) lending Pearson appropriate protective equipment, and completely ignores the provision of the contract entitling Pearson to have "access to the Work in

---

[13] Dkt. # 149-9; 149-11; 149-13; 149-15; and 149-19.

[14] Dkt. # 149-18.

5

preparation and progress wherever located."[15]

Suiter admits that, "The Pay Apps did not accurately reflect the work progress as of the date of each Pay App due to the numerous delays to the project by the Pearsons and not making timely approvals and repeated requests for free work and numerous upgrades to the project."[16] Suiter does not explain how the Pearsons' alleged delays caused him to make false statements on the Pay Apps.

Suiter also says that the Pearsons were aware that the Pay Apps were not accurate and that "the Pay Apps would bill in advance for work not yet then completed."[17] Pearson denies this.

But in early October 2013, Pearson confirmed his knowledge that the Pay Apps did not accurately reflect the progress of the work. On October 7, 2013, Pearson e-mailed Suiter to express concerns over numerous discrepancies between the represented progress in Pay App 12 and the actual work completed.[18] Among other things, Pearson questioned a $5,000 charge for stone counters, stating "[y]ou have not explained how such an expense could have occurred when the cabinets

---

[15] Dkt. # 149-4 at 7.

[16] Dkt. # 200 at 2.

[17] Dkt. # 200 at 3.

[18] Dkt. # 149-17 at 1-2.

6

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 229   Filed 02/16/16   Page 6 of 12

had not even been installed in the house."[19]  About an hour later, Suiter replied by email. In response to Pearson's question about the stone counters, Suiter said, "[t]his is for the deposit billing for the fabricator and to get on his schedule."[20] He further said that, "even if you feel that the billing is too aggressive you are not addressing the additional work which we view as a trade-off for this."[21] Suiter threatened to stop work and make a claim for delay damages.

On May 27, 2014, Pearson received a letter from Suiter explaining that Canaan Construction was in "some serious financial difficulties," that his brother Raymond T. Suiter and father Raymond C. Suiter had started Canaan Builders, LLC, a new construction company for which Suiter was going to work, and that Canaan Builders wanted to complete Pearson's project–for a price.[22]

Pearson claims that Canaan Construction breached the construction contract and is liable to him for the cost of completion and other damages. Suiter argues that, to the contrary, Pearson breached the contract and Canaan Construction is entitled to recover the unpaid contract price plus change orders and other damages from Pearson.  This motion does not ask me to resolve the

---

[19] *Id.*

[20] *Id.* at 3-5.

[21] *Id.*

[22] Dkt. # 149-22 at 3-4.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 229   Filed 02/16/16   Page 7 of 12

entire dispute between the parties; instead, Pearson asks for a determination that Suiter committed fraud when he, on behalf of Canaan Construction, charged Pearson for cabinet work that was never done.

## DISCUSSION

### I. Jurisdiction and Venue

The court has personal jurisdiction over the parties and jurisdiction of the subject matter. The bankruptcy court probably does not have constitutional power to enter a final judgment on all claims in this adversary proceeding; at a later date, the court will determine whether to enter a final judgment or to issue proposed findings and a recommended judgment on the various claims in the case. Venue is proper in this district.

### II. Standard for Summary Judgment

A party may move for summary judgment, identifying each claim or defense, or the part of each claim or defense, on which summary judgment is sought.[23] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] In making this determination, the court views the evidence in the light

---

[23] Fed. R. Civ. P. 56(a).

[24] *Id.*

8

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 229   Filed 02/16/16   Page 8 of 12

most favorable to the nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party.[25]

## III. Section 523(a)(2)

A chapter 7 discharge does not discharge an individual from any debt for money to the extent that the debtor obtained it by "false pretenses, a false representation, or actual fraud . . . ."[26] The plaintiff must prove five elements by a preponderance of the evidence:

> (i) Misrepresentation, fraudulent omission, or the debtor's deceptive conduct;
>
> (ii) Knowledge of the falsity or deceptiveness of his statement or conduct;
>
> (iii) An intent to deceive;
>
> (iv) Justifiable reliance by the creditor on the debtor's statement or conduct; and
>
> (v) Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.[27]

A creditor acts in "justifiable reliance" on a debtor's misrepresentation if he

---

[25] *Sjurset v. Button*, 2015 WL 7873404, at *3 (9th Cir. Dec. 4, 2015).

[26] 11 U.S.C. § 523(a)(2)(A).

[27] *Oney v. Weinberg (In re Weinberg),* 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009).

9

did not have notice of the debtor's fraud.[28] Justifiable reliance is a lower standard of care than reasonable reliance. Under the justifiable reliance standard, the creditor may rely on a misrepresentation even if a reasonable investigation would have uncovered the fraud.[29] But he may not succeed in a section 523(a)(2)(A) action if he had notice of the fraud.[30] "The inquiry will thus focus on whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made."[31]

Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the Bankruptcy Code's goal of giving debtors a fresh start.[32]

### IV. Application of Section 523(a)(2) to Count 35

Suiter admits that the Pay Apps falsely represented the extent to which the cabinet work was completed, and that he knew those statements were false. Pearson is entitled to partial summary judgment on those points.

---

[28] 11 U.S.C. § 523(a)(2)(A); *Field v. Mans*, 516 U.S. 59, 69-76 (1995); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090-91 (9thCir. 1996).

[29] *Eashai*, 87 F.3d at 1089.

[30] *Id.*

[31] *In re Ramirez*, 2015 WL 4480901, at *6 (Bankr. D. Haw. July 21, 2015).

[32] *Caneva v. Sun Communities Operating Limited Partnership (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008).

10

Suiter also testifies that the Pearsons knew that the Pay Apps were false in this respect "through a combination of emails, oral discussions, and course of dealing (i.e. payments) . . . ."[33] On a motion for summary judgment, I must accept this testimony as true without evaluating its credibility. Based on this testimony, the trier of fact could find that Suiter did not intend to deceive Pearson or that Pearson did not justifiably rely on the statements in the Pay Apps. Therefore, summary judgment on those points must be denied.

In addition, Pearson's own communications show that, at least by October 2013, he suspected that the Pay Apps were false. He could not have justifiably relied on the Pay Apps when he paid Pay App 12.

Summary judgment on the issue of damages must also be denied. If the court determines that Pearson breached the contract and owes money to Canaan Construction, the court might determine that Suiter's misrepresentations did not cause any net injury to Pearson.

## CONCLUSION

Partial summary judgment is GRANTED in favor of Pearson determining that the statements in the Pay Apps about the progress of the cabinet work were false and that Suiter knew they were false. Pearson's motion is DENIED in all

---

[33] Dkt. # 200 at 2.

11

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 229   Filed 02/16/16   Page 11 of 12

other respects.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 229   Filed  02/16/16   Page 12 of 12