

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAX BRADFORD SUITER,<br><br>    Debtor. | Case No. 15-00083<br>Chapter 7 |
| THOMAS C. PEARSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MAX BRADFORD SUITER, et al.,<br><br>    Defendants. | Adv. Pro. No. 15-90020<br><br>Re: Dkt. No. 293 |

### MEMORANDUM OF DECISION ON
### MOTION FOR PARTIAL SUMMARY JUDGMENT
### ON COUNTS 2 & 3 OF COUNTERCLAIM
### (CHANGE ORDER 9)

      This adversary proceeding arises out of a construction contract between Plaintiff Thomas C. Pearson, as owner, and Defendant Canaan Construction, Ltd. ("Canaan Construction"). Defendant Max Bradford Suiter ("Suiter") is the owner of Canaan Construction. The remaining defendants (Canaan Builders, LLC, 1122

Makepono Street, LLC, and Raymond T. Suiter) are affiliated with Suiter.

Defendant Canaan Construction has filed a counterclaim against Pearson and his wife, Julia Pearson. Counts 2 and 3 of the counterclaim seek recovery under equitable theories (quantum meruit/ unjust enrichment and promissory estoppel/detrimental reliance). The Pearsons seeks a partial summary judgment determining that Canaan Construction has no equitable claims arising from work described in Change Order 9.

For the following reasons, I will grant (or recommend that the district court grant) the motion in part. This decision will be somewhat complex because some of my decisions are conditional upon subsequent resolution of factual issues.

## FACTS

Suiter is the president, sole officer, and principal responsible managing employee of Canaan Construction.[1]

Pearson entered into a contract dated September 17, 2012, with Canaan Construction for the remodeling and reconstruction of a home.[2]

I have previously ruled that Canaan Construction failed to give Pearson numerous written disclosures as required by Hawaii law.[3]

---

[1] Dkt. # 149-2.

[2] Dkt. # 31 at 12.

[3] Dkt. # 226.

2

Section 1.3 of the contract provides that it could only be modified by a change order or other writing.[4] Section A.4.1.2 of the contract provides that any party seeking, as a matter of right, an adjustment of the contract price, terms, or other provisions had to do so "within 21 days after occurrence of the event giving rise to such claim or within 21 days after the claimant first recognized the condition giving rise to the Claim, whichever is later."[5] Section A.4.1.5 of the contract provides that, "If [Canaan Construction] wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work."[6]

The parties signed eight numbered change orders and one document called a proposal which was a change order in substance.

Disputes arose among the parties. Pearson disputed the payment applications presented by Canaan Construction and, around the end of 2013, Canaan Construction stopped work on the project. Later, Canaan Construction presented proposed Change Order 9 to Pearson for execution. Pearson never signed Change Order 9. Canaan Construction claims that Pearson's construction consultant later agreed to it in an email. The Pearsons argue that the consultant's

---

[4] *See also id.* at 39, section A.7.2.

[5] *Id.* at 34-35.

[6] *Id.* at 35.

3

U.S. Bankruptcy Court - Hawaii    #15-90020    Dkt # 402    Filed 10/06/16    Page 3 of 13

email is an inadmissible settlement communication and deny that the consultant had authority to agree to Change Order 9.

## DISCUSSION

### I. Jurisdiction and Venue

The court has personal jurisdiction over the parties and jurisdiction of the subject matter. The bankruptcy court probably does not have constitutional power to enter a final judgment on all claims in this adversary proceeding; at a later date, the court will determine whether to enter a final judgment or to issue proposed findings and a recommended judgment on the various claims in the case. Venue is proper in this district.

### II. Standard for Summary Judgment

A party may move for summary judgment, identifying each claim or defense, or the part of each claim or defense, on which summary judgment is sought.[7] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] In making this determination, the court views the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be

---

[7] Fed. R. Civ. P. 56(a).

[8] *Id.*

4

drawn in favor of the nonmoving party.[9]

### III. Canaan Construction's Equitable Claims under Hawaii Law.

Hawaii law requires construction contractors to give specific disclosures in writing to homeowners.[10] I have granted partial summary judgment holding that Canaan Construction did not give Pearson all of the required written disclosures. As a result, the construction contract is void.[11]

The voidness of the contract does not deprive Canaan Construction of the right to recover from Pearson in quantum meruit.[12] But there is a cap on Canaan Construction's potential recovery:

> [T]he total of the amount of the recovery by the contractor in quantum meruit cannot exceed the net amount calculated as follows: (a) the amount that would have been due such general contractor under the contract had the contract not been void (b) less (i) the amount previously paid to the general contractor, and (ii) the total of the amounts paid and owed to all of the sub-contractors and materialmen who furnished labor or material in the improvement of the real property.[13]

---

[9] *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1347 (2015) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[10] Haw. Rev. Stat. § 444-25.5; Haw. Admin. R. §16-77-79.

[11] Haw. Rev. Stat. §§ 444-25.5(d) ("Any violation of this section shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480 . . ."); 480-12 ("Any contract or agreement in violation of this chapter is void and is not enforceable at law or in equity.").

[12] *Hiraga v. Baldonado*, 96 Haw. 365, 372 (Haw. App. 2001).

[13] *Id.*

5

This formula produces a sensible result: if a construction contract is void because the contractor did not comply with law, the construction contract can never recover more than the contractor could have recovered if the contract were valid. If this were not the rule, a construction contract could be better off if the contract is void than if it were not.

## IV.  Change Order 9 in General

The *Hiraga* formula requires the court to calculate how much Canaan Construction could have recovered from Pearson if the contract were not valid. The Pearsons argue that Canaan Construction is not entitled to recover the charges set forth in Change Order 9 under the contract, and that therefore Canaan Construction's maximum recovery on a quantum meruit theory must not include those charges.

The Pearsons contend, and Canaan Construction does not deny, that Pearson never signed Change Order 9. Canaan Construction argues, however, that a construction consultant retained by Pearson sent an email to Suiter in which the consultant agreed to Change Order 9,[14] and that the consultant's agreement is binding on Pearson. The Pearsons respond in several ways.

First, the Pearsons argue that the consultant's email is a settlement communication that is inadmissible under Fed. R. Evid. 408. I disagree. The rule

---

[14] Dkt. # 312-1 at 2.

6

U.S. Bankruptcy Court - Hawaii    #15-90020    Dkt # 402    Filed  10/06/16    Page 6 of 13

does not preclude a party from attempting to prove that the parties actually agreed to settle some or all of the claims in the case.[15]

Second, the Pearsons point out that, under the contract, Pearson was the "Designated Representative" of the owner, and the consultant never became a "Designated Representative." But the contract does not say that the Designated Representative is the only person with authority to bind the party. The Pearsons claim that the consultant sent the email in an effort to settle the dispute, that his statements about Change Order 9 would have been operative only if the parties reached an overall settlement (which they did not), and that, in any event, the consultant lacked authority to bind Pearson to an agreement.

Third, the Pearsons point out that, under Hawaii law, a construction contract must be in writing and signed by the owner. But the statute does not preclude the normal common law rules that a party may act through an agent.

All that having been said, there are genuine disputes of fact concerning whether the consultant had actual or apparent authority to bind Pearson to Change Order 9 and whether the consultant intended to bind Pearson to Change

---

[15] **"**It is well established that this rule does not exclude evidence related to a settlement when it is offered for the purposes of interpreting or enforcing the settlement." *Marshak v. Vidov (In re Vidov)*, 2014 WL 3766721, at *6 (9th Cir. B.A.P. July 31, 2014), *citing* Advisory Committee Notes accompanying 2006 amendments to Evidence Rule 408; *Coakley & Williams v. Structural Concrete Equip.*, 973 F.2d 349, 353–54 (4th Cir.1992)); *and Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir.1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.").

Order 9.

If the trier of fact finds that Pearson (through his consultant) agreed to Change Order 9, then Pearson's objections to the specific components of Change Order 9 would be irrelevant. Thus, the discussion contained in the following sections is applicable only if the trier of fact decides that Pearson did not agree to Change Order 9.

## V. Pearson's Specific Objections to Change Order 9.

**Procedural Noncompliance.** The Pearsons argue that Change Order 9 is invalid in its entirety because Canaan Construction did not give written notice before commencing the additional work and did not timely seek an adjustment of the contract price, in accordance with the contract. Canaan Construction says that the Pearsons authorized all of the work reflected in Change Order 9, but does not deny Pearson's proof that Canaan Construction did not follow the process spelled out in the contract.

At first blush, it seems odd to hold Canaan Construction to the requirements of a void contract. But one must remember that the contract is void because Canaan Construction did not follow Hawaii law. It would be anomalous and unfair to deprive Pearson of the protections of the contract because Canaan Construction did not obey the law. Further, the *Hiraga* formula requires the court

8

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 402   Filed 10/06/16   Page 8 of 13

to determine how much would have been owed under the contract. One cannot determine that amount without also determining whether the contractor complied with the procedural requirements of the contract.

Because Canaan Construction does not deny that it failed to follow the contractual process for change orders and adjustments, Change Order 9 is not enforceable against Pearson, and the amounts claimed in Change Order 9 may not be added to Canaan Construction's maximum quantum meruit recovery.

**Incomplete Work.** The Pearsons argue that Canaan Construction never completed many of the items described in Change Order 9. Canaan Construction concedes that this argument is partly correct; it says that "Change Order #9 includes work completed on the Pearson residence as well as work not yet finished, but was in progress . . . ."[16] Canaan Construction does not state the value of the work that was incomplete but "in progress" on the date of termination.

Assuming that Canaan Construction is entitled to recover for any of the work covered by Change Order 9 despite its failure to comply with the applicable procedural requirements, there is a genuine dispute of material fact concerning the amount (if any) that Canaan Construction would be entitled to recover under the contract for the work that was incomplete but "in progress" at the date of

---

[16] Dkt. # 312 at 3, 312-1 at 6-17.

9

termination. To the extent Canaan Construction is not entitled to recover for such work under the contract, its maximum quantum meruit recovery must also be reduced.

**"Free" Work.** The Pearsons argue that Suiter represented that Canaan Construction would not charge for much of the work described in Change Order 9 (the pool equipment pad, the extension of stairs, and the sweet filters). Canaan Construction does not respond to this argument. Even assuming that Change Order 9 is enforceable against Pearson at all, the Pearsons are entitled to summary judgment on this point.

**Waiver pursuant to Pay App 12.** The Pearsons contend that, when Pearson agreed to drop his objections and pay the amounts requested in Pay App 12, Canaan Construction agreed to waive some or all of the claims covered by Change Order 9. But the email exchange which the Pearsons cite is cryptic at best. Assuming that the trier of fact determines that Pearson is not bound to Change Order 9, genuine disputes of material fact preclude summary judgment on this point.

**Plumbing Fixtures.** The Pearsons claim that Canaan Construction agreed to provide the plumbing fixtures for a flat amount of $25,000 plus $4,774.10 documented in Change Order 1, and that the claim in Change Order 9 for an

10

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 402   Filed 10/06/16   Page 10 of 13

additional $19,489.88 for the plumbing fixtures is unauthorized. Suiter repeatedly confirmed that Canaan Construction would charge $25,000 for the plumbing fixture package (plus the additional amount agreed to in Change Order 1) regardless of its cost.[17] Suiter's explanation of Canaan Construction's change of position is nonsensical:

> On the plumbing fixture line item # 2, there was an allowance for plumbing fixtures up to $25,000 but Julia Pearson did not follow the agreement and exceeded the agreement with her expensive plumbing upgrades.[18]

This statement completely ignores Suiter's repeated statements that Canaan Construction would provide the plumbing package for $25,000 plus the Change Order 1 amount, even though the actual cost was higher. Even if Change Order 9 is enforceable against Pearson, the Pearsons are entitled to summary judgment on this point.

**Retaining Wall Waterproofing.** Pearson contends that Canaan Construction is not entitled to charge for repairs to a retaining wall because it had given Pearson a warranty of the "structural integrity" of the same wall.

---

[17] Dkt. # 294-44, -45.

[18] Dkt. # 312 at 7.

11

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 402   Filed 10/06/16   Page 11 of 13

Pursuant to a proposal dated November 18, 2012, and covered by Change Order 1, Canaan Construction installed micropiles to address possible movement of a retaining wall. Canaan Construction provided a "warranty [of] the structural integrity of the CMU repaired wall as long as the Pearsons, Tom, Julia, and Alicia own the home."[19]

During October 2013, water began to leak through the retaining wall. Canaan Construction determined that "some of the waterproof barrier that was applied by Canaan Construction LTD on this Main Retaining Wall last year was delaminating. . . . [T]he waterproofing on the street side of the Main Retaining wall has failed since it was applied when the wall was built. The Hydrostatic pressure is too much for the inside membrane to hold."[20] Canaan Construction brought in a subcontractor, at a cost of about $17,000, to inject a polyurethane sealant into the wall. Pearson argues that this work is covered by the warranty and that he should not have to pay for it.

There is a genuine dispute of material fact concerning the meaning of the term "structural integrity" in the warranty. One could read the term narrowly as a promise that the wall would not collapse; the record does not establish that the wall

---

[19] Dkt. # 294-8 at 2.

[20] Dkt. # 295-5 at 1.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 402   Filed 10/06/16   Page 12 of 13

would have fallen down if the additional sealing were not done. One could also read the term more broadly and include watertightness as an aspect of "structural integrity;" this reading would be particularly plausible if it were shown that water leaks could have undermined the foundation of the wall. But I can not exclude either of these interpretations on this record.

If Change Order 9 is binding on Pearson, summary judgment on this point should be denied.

## CONCLUSION

Pearson's motion should be granted to the extent set forth above.

## END OF ORDER

U.S. Bankruptcy Court - Hawaii    #15-90020    Dkt # 402    Filed 10/06/16    Page 13 of 13