

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 15-00083 |
| | Chapter 7 |
| MAX BRADFORD SUITER, | |
| Debtor. | |
| THOMAS C. PEARSON, | Adv. Pro. No. 15-90020 |
| Plaintiff, | |
| vs. | |
| MAX BRADFORD SUITER, et al., | |
| Defendants. | |

## PROPOSED FINDINGS AND
## RECOMMENDED PARTIAL JUDGMENT

## TABLE OF CONTENTS

I.    BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.   Motions to Dismiss Second Amended Complaint . . . . . . . . . . . . . . . 9
       1.   Suiter's personal liability . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
       2.   Abstention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
       3.   Avoidance claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
       4.   Alter ego claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       5.   Section 727(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       6.   Section 523(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
       7.   Section 523(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    B.   Motions to Dismiss Third Amended Complaint . . . . . . . . . . . . . . . 21
       1.   Suiter's and Canaan Construction's Motions to
           Dismiss Third Amended Complaint . . . . . . . . . . . . . . . . . . . 21
           (a)   UDAP and fraud claims . . . . . . . . . . . . . . . . . . . . . . . 22
           (b)   Section 523(a)(2)(A) claims . . . . . . . . . . . . . . . . . . . 25
           (c)   Section 727(a)(3) claims . . . . . . . . . . . . . . . . . . . . . . 26
       2.   Canaan Builders' Motion to Dismiss Third Amended
           Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           (a)   No liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           (b)   Alter ego claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
           (c)   Civil conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    C.   Counterclaim and Third Party Complaint Against The Pearsons . . . 29
       1.   Motions to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
           (a)   Judicial estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
           (b)   Void contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
           (c)   Tortious interference . . . . . . . . . . . . . . . . . . . . . . . . . 34
       2.   Motion for Partial Summary Judgment on Count 4 of
           Counterclaim (Intentional Interference with Contract And
           Business Relations) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

i

|        | (a) | Intentional Interference with Contract . . . . . . . . . . . . . 36 |
|        | (b) | Intentional Interference with Prospective Business Advantage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38 |

D.    Pearson's Motion for Partial Summary Judgment on Counts 3-5 (UDAP under Haw. Rev. Stat. Ch. 444) . . . . . . . . . . . . . . . . . . . . . 40

E.    Pearson's Motion for Partial Summary Judgment on Counts 2 and 3 of Counterclaim (Change Order 9) . . . . . . . . . . . . . . . . . . . . . 46
      1.    Canaan Construction's Equitable Claims under Hawaii Law . 48
      2.    Change Order 9 in General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
           (a)   Procedural Noncompliance . . . . . . . . . . . . . . . . . . . . . . . 49
           (b)   Nonacceptance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
      3.    Pearson's Specific Objections to Change Order 9 . . . . . . . . . 52
           (a)   "Free" Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
           (b)   Plumbing Fixtures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
           (c)   Incomplete Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
           (d)   Waiver pursuant to Pay App 12 . . . . . . . . . . . . . . . . . . 54
           (e)   Retaining Wall Waterproofing . . . . . . . . . . . . . . . . . . . 55

F.    Motion for Partial Summary Judgment on UDAP Claims . . . . . . . . 56

G.    Pearson's Motion for Partial Summary Judgment on Counts 127 and 128 (Sections 727(a)(2)(A) and (a)(4)(A)) . . . . . . . . . . . . . . . . . 58
      1.    Section 727(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
      2.    Section 727(a)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

H.    Pearson's Motion for Summary Judgment on Count 129 (Section 727(a)(3)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

I.    Motion for Partial Summary Judgment on Counts 128 & 129 of Third Amended Complaint (Sections 727(a)(3) and (A)(4)(A)) . . . . 72

J.    Pearson's Motion for Partial Summary Judgment on Count 21 (The Window Claims) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

K.    Pearson's Motion for Partial Summary Judgment on Count 35 (The Cabinet Claims) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

ii

L.     Motion for Partial Summary Judgment on Count 33 of Third Amended Complaint (The PV Claims) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

M.    Motion for Partial Summary Judgment on Counts 47, 54, & 59 of Third Amended Complaint (The T&G, Gypboard, and Finish Carpentry Claims) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

N.    Motion for Partial Summary Judgment on Counts 12 and 19 (The Stone Claims) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 4 of 98

# PROPOSED FINDINGS AND RECOMMENDED PARTIAL JUDGMENT

This adversary proceeding arises out of a construction contract between Plaintiff Thomas C. Pearson, as owner, and Defendant Canaan Construction, Ltd. ("Canaan Construction"). Defendant Max Bradford Suiter ("Suiter") is the owner of Canaan Construction. Defendants Canaan Builders, LLC ("Canaan Builders"), 1122 Makepono Street, LLC ("1122 Makepono"), and Raymond T. Suiter ("R.T. Suiter") are affiliated with Suiter. Suiter and R.T. Suiter are brothers.

There has been extensive litigation activity in this case. Pearson's third amended complaint[1] contains 1,380 numbered paragraphs divided into 171 counts. Canaan Construction has filed a five-count counterclaim against Pearson and a similar five-count third party complaint against Julia Lin Pearson, Pearson's wife.[2] Canaan Construction has demanded a jury trial on all issues so triable.[3] Suiter has objected to the proof of claim filed by Pearson,[4] and the trial of that objection has been consolidated with this adversary proceeding.[5]

The parties have filed twenty-four dispositive motions. As is explained in more

---

[1] Dkt. 65.

[2] Dkt. 239, 244.

[3] Dkt. 241.

[4] Dkt. 205.

[5] Dkt. 203.

1

detail below, some of the motions address core proceedings in which the bankruptcy court can enter final judgment, and others relate to noncore proceedings where the bankruptcy court can only provide recommendations for the district court's de novo review. Adding to the complexity, the core and noncore proceedings share common factual questions. Therefore, this recommendation will be unusually lengthy.

## I.  BACKGROUND FACTS

Suiter is the president, sole officer, and principal responsible managing employee of Canaan Construction.[6]

Pearson entered into a contract dated September 17, 2012, with Canaan Construction to remodel and reconstruct of Pearson's home for $1,200,000.[7]

After construction began, disputes arose between the parties. Pearson and Canaan Construction accused each other of breaching the contract. I discuss these disputes in more detail below. Pearson ceased making payments and Canaan Construction stopped work.

On May 27, 2014, Pearson received a letter from Suiter explaining that Canaan Construction was in "some serious financial difficulties," that his brother R.T. Suiter and father Raymond C. Suiter had started Canaan Builders, a new construction

---

[6] Dkt. 31 at 9, 149-2. All citations to page numbers in the record refer to the red, ECF-generated numbers.

[7] Dkt. 31 at 12.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 6 of 98

company for which Suiter was going to work, and that Canaan Builders wanted to complete Pearson's project–for an additional $682,883.[8]

On January 22, 2015, Suiter filed a chapter 7 bankruptcy petition. This is his second trip to the bankruptcy court; he filed a chapter 7 petition in 2003 and received a discharge.[9]

Pearson claims that Canaan Construction breached the construction contract and is liable to him for the cost of completion and other damages. Pearson also claims that the defendants committed fraud, unfair and deceptive trade acts and practices, and other wrongs. Suiter argues that, to the contrary, Pearson breached the contract and Canaan Construction is entitled to recover the unpaid contract price plus change orders and other damages from Pearson.

## II.  JURISDICTION AND VENUE

There is no dispute that the court has personal and subject matter jurisdiction and venue is proper in this district.

In a "core proceeding," the bankruptcy court can enter final judgment, subject to ordinary appellate review.[10]  The following counts in the third amended complaint are "core proceedings":

---

[8] Dkt. 31-1 at 44-45, 149-22 at 3-4.

[9] *In re Suiter*, No. 03-00036 (Bankr. D. Hawaii filed January 7, 2003).

[10] 28 U.S.C. § 157(b).

3

| Count | Description |
|---|---|
| 12 | Nondischargeability under § 523(a)(2)(A) as to the "stone floor" claims |
| 19 | Nondischargeability under § 523(a)(2)(A) as to the "other stone" claims |
| 26 | Nondischargeability under § 523(a)(2)(A) as to the "windows" claims |
| 33 | Nondischargeability under § 523(a)(2)(A) as to the "PV" claims |
| 40 | Nondischargeability under § 523(a)(2)(A) as to the "cabinets" claims |
| 47 | Nondischargeability under § 523(a)(2)(A) as to the "T&G" claims |
| 54 | Nondischargeability under § 523(a)(2)(A) as to the "gypboard" claims |
| 59 | Nondischargeability under § 523(a)(2)(A) as to the "finished carpentry" claims |
| 66 | Nondischargeability under § 523(a)(2)(A) as to the "gutters" claims |
| 73 | Nondischargeability under § 523(a)(2)(A) as to the "wood doors" claims |
| 80 | Nondischargeability under § 523(a)(2)(A) as to the "garage door" claims |
| 87 | Nondischargeability under § 523(a)(2)(A) as to the "furniture" claims |
| 94 | Nondischargeability under § 523(a)(2)(A) as to the "lights" claims |
| 101 | Nondischargeability under § 523(a)(2)(A) as to the "concrete" claims |
| 108 | Nondischargeability under § 523(a)(2)(A) as to the "AC" claims |
| 115 | Nondischargeability under § 523(a)(2)(A) as to the "plumbing" claims |
| 118 | Nondischargeability under § 523(a)(2)(A) as to the "nondisclosure" claims |
| 124 | Nondischargeability under § 523(a)(2)(A) as to the "UDAP" claims |
| 127 | Denial of discharge under § 727(a)(2)(A) |
| 128 | Denial of discharge under § 727(a)(4)(A) |
| 129 | Denial of discharge under § 727(a)(3) |
| 136 | Nondischargeability under § 523(a)(2)(A) as to the "mirrors" claims |

4

| 143 | Nondischargeability under § 523(a)(2)(A) as to the "hardwood floors" claims |
|-----|-----|
| 150 | Nondischargeability under § 523(a)(2)(A) as to the "glass railings" claims |
| 157 | Nondischargeability under § 523(a)(2)(A) as to the "electrical" claims |
| 164 | Nondischargeability under § 523(a)(2)(A) as to the "Change Order 7" claims |
| 167 | Nondischargeability under § 523(a)(2)(A) as to the "initial deposit" claims |

In addition, all of Pearson's claims against Suiter are encompassed in the proof of claim that Pearson filed in Suiter's bankruptcy case, and are covered by Suiter's objection to that claim. This dispute about the allowability of Pearson's claims in Suiter's bankruptcy case is a core proceeding.[11]

The remaining claims in the third amended complaint, and all of the claims in Canaan Construction's counterclaim and third party complaint, are not core proceedings. Because the defendants have not consented to the entry of final judgment by the bankruptcy court, the bankruptcy court may not enter final judgment on those claims, but the bankruptcy court may provide proposed findings and a recommended judgment for the district court's de novo review.[12]

The overlap between the core and noncore proceedings further complicates

---

[11] 28 U.S.C. § 157(b)(2)(B).

[12] 28 U.S.C. § 157(c).

5

matters. For example, each of the nondischargeability claims against Suiter under section 523 of the Bankruptcy Code, and Pearson's standing to object to Suiter's discharge under section 727, are based on the assertion that Suiter owes a debt to Pearson. All of those claims have their genesis in the construction contract between Pearson and Canaan Construction. Because Canaan Construction is not a debtor in bankruptcy, and Pearson's claims against Canaan Construction are not based on bankruptcy law, Pearson's claims against Canaan Construction are not core proceedings. In other words, before the bankruptcy court can decide the core proceedings between Pearson and Suiter, the district court must decide the noncore proceedings between Pearson and Canaan Construction.

Therefore, any determination in this decision in favor of Pearson on the section 523 and 727 claims is subject to a determination in favor of Pearson on the related noncore claims that Canaan Construction (and therefore Suiter) owes money to Pearson.

In an attempt to make this disposition complete and comprehensible, I will set forth my reasoning on the core proceedings in which I can enter final judgment, as well as the noncore proceedings where I can only recommend that the district court enter a final judgment.

Pearson argues that he is entitled to prevail on his objections to discharge under

6

section 727 even though his claims against Suiter are disputed. Pearson's claims, even though they are disputed, give him standing to maintain this action. But the bankruptcy court should not deny Suiter's discharge unless and until the district court determines that Suiter owes money to Pearson. It would be anomalous to deny Suiter a discharge in bankruptcy, only to determine later that the party who objected to the discharge had no valid claims against him.

## III. STANDARDS OF REVIEW

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[13] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[14] A formulaic recitation of the elements of a cause of action does not suffice.[15]

A party may move for summary judgment, identifying each claim or defense, or the part of each claim or defense, on which summary judgment is sought.[16] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any

---

[13] Fed. R. Civ. P. 12(b)(6).

[14] *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046, 1054 (9th Cir. 2014) (internal quote marks omitted).

[15] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] Fed. R. Civ. P. 56(a).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 11 of 98

material fact and the movant is entitled to judgment as a matter of law."[17] In making this determination, the court views the evidence in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party.[18]

Section 502 of the Bankruptcy Code governs the allowance of claims in bankruptcy. Unless a specific bankruptcy defense applies (and none are applicable here), a claim is disallowed only to the extent that the claim is unenforceable under applicable nonbankruptcy law.[19] The claim is subject to any defenses or objections that might exist outside of bankruptcy.[20]

A properly filed proof of claim is *prima facie* valid. An objector bears the initial burden of producing evidence that would negate at least one of the elements of the claim. If the objector meets that burden, then the burden shifts back to the claimant to prove the claim by a preponderance of the evidence. The claimant always bears the burden of persuasion.[21]

_____

[17] *Id.*

[18] *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009), *cert. denied*, 562 U.S. 829 (2010).

[19] 11 U.S.C. § 502(b)(1).

[20] *In re Tribune Media Co.*, 552 B.R. 282, 291-2 (Bankr. D. Del. 2016).

[21] *Lundell v. Anchor Const. Specialist, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (internal citations omitted).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 12 of 98

## IV.  DISCUSSION

### A.  Motions to Dismiss Second Amended Complaint.

Suiter, Canaan Construction, and Canaan Builders filed separate motions to dismiss Pearson's second amended complaint.[22] The motions made similar arguments.

### 1.  *Suiter's personal liability.*

Suiter argued that Pearson has no claims against him because Suiter's company, Canaan Construction, not Suiter personally, contracted with Pearson. I recommend that the district court reject this argument. The second amended complaint alleges that Suiter made misrepresentations and personally committed a variety of other allegedly wrongful acts. Under Hawaii law, when an officer, director, or shareholder of a corporation actively or passively participates in wrongful conduct, he or she is "not shielded by the corporation and will be personally liable."[23] The same principle should apply to a member of a limited liability company.

Pearson also argues that Canaan Construction committed numerous unfair and deceptive trade acts, in violation of Haw. Rev. Stat. § 480-2. Hawaii law imposes

---

[22] The second amended complaint is Dkt. 10. (Pearson amended his initial complaint twice as a matter of right.) The motions to dismiss are Dkt. 14, 20, and 24.

[23] *Eastern Star, Inc., v. Union Bldg. Materials Corp.*, 6 Haw. App. 125, 134-35, 712 P.2d 1148, 1155 (1985) (quoting *Burgess v. Arita*, 5 Haw. App. 581, 594, 704 P.2d 930, 939 (1985)).

9

personal liability on Suiter for such acts.[24]

Thus, the fact that Pearson entered into a contract with Canaan Construction, and not with Suiter personally, does not insulate Suiter from liability from his own tortious or wrongful conduct.

### 2. *Abstention*.

Canaan Construction argued that the court should dismiss the claims against it based on abstention, in favor of a mechanics' lien proceeding brought by Canaan Construction against Pearson in state court. Pearson pointed out that the mechanics' lien case was dismissed before Pearson filed his reply memorandum and that, still later, Canaan Construction filed a new breach of contract action in state court.

28 U.S.C. § 1334(c)(1) provides for discretionary abstention:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case

---

[24] Haw. Rev. Stat. § 480-17 provides:

(a)   Whenever a corporation violates any of the penal provisions of this chapter, the violation shall be deemed to be also that of the individual directors, officers, or agents of the corporation who have authorized, ordered, or done any of the acts constituting in whole or in part the violation.

(b)   Whenever a limited liability company violates any of the penal provisions of this chapter, the violation shall be deemed to be also that of the individual members, managers, or agents of the limited liability company who have authorized, ordered, or done any of the acts constituting in whole or in part the violation.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 14 of 98

under title 11.[25]

According to the Ninth Circuit, a court should consider twelve factors in determining whether discretionary abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.[26]

The court must weigh each of these factors against the others. A court can apply discretionary abstention even if fewer than all of the factors weigh in favor of abstention, and vice versa.[27] In this case, the factors weigh against abstention.

<u>Factor 1- Effect on Administration of the Estate</u>.  Almost all of the claims in this case have some bearing on Suiter's entitlement to a discharge. Abstaining would

---

[25] 28 U.S.C. § 1334(c)(1).

[26] *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990) (quoting *In re Republic Reader's Serv., Inc.*, 81 B. R. 422, 429 (Bankr. S. D. Tex. 1987)).

[27] *Id.*

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 15 of 98

delay the entry (or denial) of his discharge and keep the bankruptcy case open longer than necessary.

Factor 2- State Law Issues Predominate Over Bankruptcy Issues. There are many bankruptcy law issues in this adversary proceeding.

Factor 3- Difficulty or Unsettled Nature of Applicable Law. The applicable law is not over-complicated or novel.

Factor 4- Presence of a Related Proceeding in State Court. The record does not reveal the current status of Canaan Construction's collection action in state court.

Factor 5- Jurisdictional Basis Other than 28 U.S.C. § 1334. There is apparently no basis for federal jurisdiction other than section 1334.

Factor 6- Degree of Relatedness or Remoteness to Bankruptcy Case. Large portions of this case are central to Suiter's bankruptcy case, because they affect his right to a discharge.

Factor 7- Substance Rather than Form of "Core" Proceeding. Portions of this case are core in both form and substance. Others are plainly noncore.

Factor 8- Feasibility of Severing State Law Claims from Core Bankruptcy Matters. The state law and bankruptcy law claims are so tightly connected that severance is not feasible.

Factor 9- Burden of Bankruptcy Court's Docket. This case has been active and

12

complicated but not unduly burdensome.

Factor 10- Likelihood that Commencement in Bankruptcy Court Involves Forum Shopping. There are no indications of forum shopping.

Factor 11- Existence of a Right to a Jury Trial. The defendants other than Suiter have requested a jury trial, and the district court can accommodate that request.

Factor 12- Presence of Nondebtor Parties. Only one party–Suiter–is a debtor.

Under the *Tucson Estates* analysis, the facts of this case weigh against the exercise of discretionary abstention under 28 U.S.C. § 1334(c)(1). All of the claims in this adversary proceeding are closely related to each other. The federal courts have primary, if not exclusive, jurisdiction over some of the most important claims: the claims against Suiter under sections 523 and 727.[28] Abstention would split one integrated case into two separate parts before two different courts, with obvious inefficiency and risks of inconsistent results.

### 3. *Avoidance claims.*

The defendants argue that Pearson cannot assert claims to avoid and recover fraudulent transfers because those claims belong exclusively to the trustee. I recommend that the district court agree with this argument and dismiss those claims without leave to amend. Section 548 and similar provisions of the Bankruptcy Code

---

[28] *See McGhan v. Rutz (In re McGhan)*, 288 F.3d 1172 (9th Cir. 2002).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 17 of 98

permit "the trustee" to avoid certain transfers. A creditor may not seek avoidance (unless perhaps the trustee agrees to permit the creditor to do so and and the bankruptcy court approves such an agreement).[29] Pearson cannot assert those claims.

### 4.    *Alter ego claims*.

The defendants argued that Pearson cannot assert "alter ego" claims against the entity defendants because those claims belong to the bankruptcy estate. I recommend that the district court agree. The Bankruptcy Appellate Panel for this circuit has so held.[30] If the entities are "alter egos" of Suiter, all of their assets should be available, not just to Pearson, but to all of Suiter's creditors. (Likewise, all of the entities' liabilities would become liabilities of Suiter.) It is not logical to say that an entity is an alter ego of its owner, but only with respect to one creditor of the owner. Either the owner and the entity are one and the same or they are not.

### 5.    *Section 727(a)(3)*.

Suiter argues that the second amended complaint does not adequately allege a claim under section 727(a)(3). That section provides that the bankruptcy court may not grant a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or

---

[29] *Hansen v. Finn (In re Curry & Sorenson, Inc.)*, 57 B.R. 824, 827 (B.A.P. 9th Cir. 1986); *In re Conley*, 159 B.R. 323, 324 (Bankr. D. Idaho 1993).

[30] *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 385 (B.A.P. 9th Cir. 1997). *But see Ahcom, Inc., v. Smeding*, 623 F.3d 1248 (9th Cir. 2010) (applying California law).

14

failed to keep papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[31] This section recognizes that the bankruptcy discharge is predicated on the honest presentation of a debtor's financial affairs.[32]

To carry its initial burden,[33] the plaintiff must show "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."[34] Once the plaintiff shows that the debtor's records are absent or inadequate, the burden of proof shifts to the debtor to justify the inadequacy or nonexistence of records.[35] "Justification for [a] bankrupt's failure to keep or preserve books or records will depend on . . . whether others in like circumstances would ordinarily keep them."[36] The debtor must provide a credible explanation for the failure

---

[31] 11 U.S.C. § 727(a)(3).

[32] *Caneva v. Sun Communities Operating Limited Partnership (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008) (*citing In re Cox*, 41 F.3d 1294, 1296 (9th Cir. 1994)).

[33] Fed. R. Bankr. P. 4005.

[34] *In re Cox*, 41 F.3d at 1296 (*quoting Meridan Bank v. Alten*, 958 F.2d 1226, 1232 (3rd Cir. 1992)).

[35] *Id.*

[36] *In re Cox*, 41 F.3d at 1299 (internal quote marks omitted).

15

to keep records.[37]

The statute does not require absolute completeness of the debtor's records but it does require the debtor to keep and preserve records that will allow his creditors to ascertain his financial condition and business transactions.[38] "[W]hen a debtor owns and controls numerous business entities and engages in substantial financial transactions, the complete absence of recorded information related to those entities and transactions establishes a *prima facie* violation of section 727(a)(3)."[39]  Also, if the debtor transfers a large sum of money to a third party but fails to keep documents evidencing the transfer, there is a *prima facie* violation of section 727(a)(3).[40]

The second amended complaint alleged that Suiter failed to keep proper records relating to Pearson's project. The failure to keep adequate records concerning a single project, however, may not be sufficiently material to justify denial of the discharge.

The second amended complaint also alleged that the U.S. Department of Labor sued Suiter and one of the entities for failure to keep adequate records, and that the suit was resolved by a consent judgment. The second amended complaint did not describe what records were at issue or allege that the records in that case were ones

---

[37] *Western Wire Works, Inc. v. Lawler (In re Lawler)*, 141 B.R. 425 (B.A.P. 9th Cir. 1992).

[38] *In re Caneva*, 550 F.3d at 762.

[39] *Id.*

[40] *Id.*

16

"from which the debtor's financial condition or business transactions might be ascertained" or that the failure to keep records was not justified within the meaning of section 727(a)(3).

Therefore, the section 727(a)(3) claim should be dismissed with leave to amend.

### 6. *Section 523(a)(4)*.

Suiter argued that the second amended complaint did not adequately allege a claim under section 523(a)(4). That section provides that a chapter 7 discharge does not discharge a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."[41] Whether a debtor acted in a fiduciary capacity is determined by federal law.[42] The term is limited to technical or express trusts. "The core requirements are that the relationship exhibit characteristics of the traditional trust relationship, and that the fiduciary duties be created before the act of wrongdoing and not as a result of the act of wrongdoing."[43]

The second amended complaint alleged that Suiter owed Pearson fiduciary

---

[41] 11 U.S.C. § 523(a)(4).

[42] *Double Bogey, L.P., v. Enea*, 794 F.3d 1047, 1050 (9th Cir. 2015).

[43] *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 758 (9th Cir. 1981); *see Mele v. Mele (In re Mele)*, 501 B.R. 357, 363 (B.A.P. 9th Cir. 2013) ("A debt is excepted from discharge under § 523(a)(4) where "'1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created.'" (quoting *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997)).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 21 of 98

duties of loyalty and the like, but it did not adequately allege that Suiter acted in a fiduciary capacity within the narrow meaning of section 523(a)(4).

To prove embezzlement, the plaintiff must prove "'(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud.'"[44]

The second amended complaint alleged that Suiter obtained payments from Pearson but did not pay certain bills related to Pearson's project. In order to state a claim for embezzlement under section 523(a)(4), the complaint would have to allege that Pearson continued to own the money after he paid it to Canaan Construction and that Pearson entrusted the money to Canaan Construction expressly to pay expenses for the project and not for any other purpose. These allegations were missing.

Therefore, the section 523(a)(4) claim should be dismissed with leave to amend.

### 7. *Section 523(a)(2)(B).*

Suiter argued that the second amended complaint did not adequately allege a claim under section 523(a)(2)(B).

A chapter 7 discharge does not discharge an individual from any debt for money to the extent that the debtor obtained it by "false pretenses, a false

---

[44] *Transamerica Commercial Finance Corporation v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) (quoting *In re Hoffman*, 70 B.R. 155, 162 (Bankr. W.D. Ark.1986)).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 22 of 98

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[45]

If the statement in question is not about the "financial condition" of the debtor or an insider, the plaintiff must prove five elements by a preponderance of the evidence:

(i)     Misrepresentation, fraudulent omission, or the debtor's deceptive conduct;

(ii)    Knowledge of the falsity or deceptiveness of his statement or conduct;

(iii)   An intent to deceive;

(iv)    Justifiable reliance by the creditor on the debtor's statement or conduct; and

(v)     Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.[46]

A creditor acts in "justifiable reliance" on a debtor's misrepresentation if he did not have notice of the debtor's fraud.[47] Justifiable reliance is a lower standard of care than reasonable reliance. Under the justifiable reliance standard, the creditor may rely on a misrepresentation even if a reasonable investigation would have uncovered the

---

[45] 11 U.S.C. § 523(a)(2)(A).

[46] *Dietz v. Ford (In re Deitz)*, 760 F.3d 1038, 1050 (9th Cir. 2014) (citing *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009)).

[47] 11 U.S.C. § 523(a)(2)(A); *Field v. Mans*, 516 U.S. 59, 69-76 (1995); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090-91 (9th Cir. 1996).

19

fraud.[48] But he may not succeed in a section 523(a)(2)(A) action if he had notice of the fraud.[49] "The inquiry will thus focus on whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made."[50]

If the statement is about "financial condition," then section 523(a)(2)(B) applies, and the creditor must prove that (1) the statement was in writing; (2) the statement was "materially false," (3) the statement concerned "the debtor's or an insider's financial condition," (4) the creditor "reasonably relied" on the statement, and (5) the debtor "made or published" the statement with "intent to deceive."[51]

The phrase "a statement respecting the debtor's . . . financial condition" has a narrow meaning. Those statements "'are those that purport to present a picture of the debtor's overall financial health.'"[52]  That type of information is analogous to "balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall

---

[48] *In re Eashai*, 87 F.3d at 1089.

[49] *Id.*

[50] *In re Ramirez*, 2015 WL 4480901, at *6 (Bankr. D. Haw. July 21, 2015) (internal quote marks omitted).

[51] 11 U.S.C. § 523(a)(2)(B).

[52] *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 578 (B.A.P. 9th Cir. 2011) (quoting *Cadwell v. Joelson*, 427 F.3d 700, 714 (10th Cir. 2005)).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 24 of 98

financial health, or equation of assets and liabilities."[53]

Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the Bankruptcy Code's goal of giving debtors a fresh start.[54]

The second amended complaint did not allege that Suiter's misrepresentations about his financial condition, as that phrase is used in section 523(a)(2)(B), were made in writing. Therefore, the section 523(a)(2)(B) claim should be dismissed with leave to amend.

## B.    Motions to Dismiss Third Amended Complaint.

In response to my order on the motions to dismiss the second amended complaint,[55] Pearson filed a third amended complaint.[56] The defendants filed another round of motions to dismiss.

### 1.    *Suiter's and Canaan Construction's Motions to Dismiss Third Amended Complaint.*

Suiter moved to dismiss eight counts of the third amended complaint.[57] Canaan Construction moved to dismiss six of those counts; its motion simply adopted

---

[53] *Id.*

[54] *In re Caneva*, 550 F.3d at 761.

[55] Dkt. 60.

[56] Dkt. 65.

[57] Dkt. 84 and 85, relating to counts 116, 117, 118, 119, 120, 122, 123, and 129.

21

Suiter's motion and added no new analysis.[58]

(a)  <u><em>UDAP and fraud claims.</em></u>

Suiter sought dismissal of various claims for unfair and deceptive trade practices under Haw. Rev. Stat. § 480-2 ("UDAP"). That statute provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." As to counts 116, 117, 119, and 122, he argued that he had no legal duty to disclose the facts that he allegedly omitted or to do the things that he allegedly failed to do. As to count 120, based on alleged unilateral changes of certain project specifications, he argued that the alleged violations amounted to a breach of contract at best and not fraud or a UDAP violation. He also argued that count 123, for various unspecified UDAP violations, was defective because it did not allege any particular act or omission and was only a formulaic recital of the elements of the claim. Pearson responded that the allegations plausibly suggested UDAP violations and fraud claims.[59]

I recommend that the district court deny this portion of the motion, with two exceptions.

The question of whether a particular act or practice is a UDAP violation is a question of fact. Section 480-2 is written broadly in order to provide plaintiffs with a

_____

[58] Dkt. 99 and 101, relating to counts 116, 117, 119, 120, 122, and 123, all based on UDAP.

[59] Dkt. 116.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 26 of 98

flexible tool to prosecute their claims.[60] Section 480-2 is a remedial statute which "must be liberally construed in order to accomplish the purpose for which it was enacted." Chapter 480 creates "a mechanism for abating practices that *potentially* injure consumers *in general*."[61]

A "'practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"[62]

An act is deceptive if it is "'(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.'"[63] A representation, omission or practice is material if it involves "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."[64] The test "is

---

[60] *Hawaii Federal Credit Union v. Keka*, 94 Haw. 213, 228, 11 P.3d 1, 16 (Haw. 2000) (quoting *State ex rel. Bronster v. United States Steel Corp.*, 919 P.2d 294, 313 (1996).

[61] *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 317, 47 P.3d 1222, 1230 (2002) (emphasis added).

[62] *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046, 1052 (9th Cir. 2014) (quoting *Balthazar v. Verizon Haw., Inc.*, 123 P.3d 194 (2005)); *Keka*, 94 Haw. at 228, 11 P.3d at 16.

[63] *Kekauoha-Alisa v. Ameriquest Mortgage Co. (In re Kekauoha-Alisa)*, 674 F.3d 1083, 1091 (9th Cir. 2012) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir. 2010).

[64] *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262 (2006) (internal quote marks omitted).

23

an objective one, turning on whether the act or omission 'is likely to mislead consumers,' . . . as to information 'important to consumers' . . . in making a decision regarding the product or service."[65] Because the test is objective, the consumer need not show that a particular act or practice deceived the consumer, but rather that it would deceive a reasonable consumer.[66]

Whether an act or practice is unfair is a question of fact.[67] "The application of an objective 'reasonable person standard . . . is ordinarily for the trier of fact, rendering summary judgment 'often inappropriate.'"[68] Summary judgment is warranted only "where evidence is so clear that no reasonable person would determine the issue in any way but one." [69]

Except for count 123, the allegations of the third amended complaint are plausible and more than sufficient to give the defendants notice of the claims against them. If the trier of fact believes those allegations, the trier of fact might decide that they add up to UDAP violations. Count 123 should be dismissed, however, because

---

[65] *Id.* (citations omitted).

[66] *In re Keakauoha-Alisa*, 674 F.3d at 1091.

[67] *Courbat*, 111 Haw. at 263.

[68] *Id.*

[69] *Tokuhisa v. Cutter Mgmt. Co.*, 122 Haw. 181, 195 (Haw. Ct. App. 2009) (internal quotation marks omitted).

24

that count is a catchall and does not state any particular facts that might give rise to UDAP liability.

I also recommend that the district court dismiss the portion of count 122 that relates to "weekend workers." A reasonable trier of fact could not find that simply hiring part-time workers, or workers who have other primary jobs, is an unfair or deceptive act or practice.

(b)     <u>§ 523(a)(2)(A) claims</u>.

Suiter argued that count 118, for nondischargeability under section 523(a)(2)(A), should be dismissed. That count alleges that Suiter misrepresented that he had the financial ability to complete Pearson's project and failed to disclose that Canaan Construction was insolvent, subject to numerous liens in substantial amounts, and did not intend to perform under the construction contract. Suiter argued that these are "statement[s] respecting the debtor's or an insider's financial condition" which are covered by section 523(a)(2)(B) and are only actionable if in writing.[70] Suiter argued that the complaint does not adequately allege a claim under section 523(a)(2)(B).

I discuss the applicable legal standard in section IV.A.7 above.

The allegation about Canaan Construction's insolvency and financial ability to

---

[70] 11 U.S.C. § 523(a)(2)(A), (B).

25

perform the Pearson contract relate to Canaan Construction's "overall financial health" and are therefore statements about "an insider's financial condition."[71] The complaint does not allege that Suiter made any such statement in writing. Therefore, I dismissed that portion of Count 118 without leave to amend. The remaining allegations about the liens against Canaan Construction and the lack of intention to carry out the construction contract are not statements about financial condition and are adequately alleged.

### (c) §727(a)(3) claims.

Suiter argued that count 129, for denial of discharge under section 727(a)(3), should be dismissed because the records that he allegedly did not maintain were actually not missing or were not material. This count alleged that Suiter discarded Canaan Construction's bookkeeping computer in 2014, that Suiter failed to keep records of his purchase of Canaan Construction from his father in 2006 for $2.5 million, and that the U.S. Department of Labor found that Canaan Construction and Suiter failed to keep adequate employment-related records. In response, Suiter claimed that he backed up the data on the discarded computer and that the other records were not material.

---

[71] Suiter owned 100% of the stock of Canaan Construction. Therefore, Canaan Construction is an "affiliate" and an "insider" of Suiter. 11 U.S.C. §§ 101(2)(A)(B), 102(31)(A)(iv), (E).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 30 of 98

I discuss the applicable legal standard in section IV.A.5 above.

I denied this aspect of the motion. The allegations of the questioned count plausibly allege the claim asserted. The real issues are whether the computer backup exists and whether any missing records are material. These are questions of fact that should not be decided on a motion under rule 12.[72]

### 2. *Canaan Builders' Motion to Dismiss Third Amended Complaint*.

Canaan Builders, 1122 Makepono, and R.T. Suiter moved to dismiss the third amended complaint against them in its entirety.[73]

#### (a) <u>No liability</u>.

Canaan Builders, 1122 Makepono, and R.T. Suiter first argued that Pearson had no dealings with them, so they could be liable to Pearson only if Suiter is liable to Pearson, and Suiter is not liable. For the reasons explained in section IV.A.1 above, I recommend that the district court not dismiss the complaint on this ground but leave for subsequent determination the question whether Suiter owes money to Pearson.

---

[72] Pearson later filed a motion for partial summary judgment on this claim. *See* section IV.H below.

[73] Dkt. 95.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed   11/15/16   Page 31 of 98

## (b)   *Alter ego claims*.

The moving defendants sought dismissal of the "alter ego" claims (counts 125 and 126). As I explain in section IV.A.4 above, only Suiter's bankruptcy trustee, and not Pearson, is entitled to assert these claims. Therefore, I recommend that the district court dismiss these claims without leave to amend.

## (c)   *Civil conspiracy*.

The moving defendants sought dismissal of the "civil conspiracy" claims.[74] They argue that they first came on to the scene after the allegedly fraudulently conduct had ended and after Pearson first suspected the fraud. They say that their first connection to the Pearson project occurred in June 2014, when Canaan Builders made a proposal to finish the project.

The third amended complaint alleges that 1122 Makepono and R.T. Suiter conspired in the fraud when they refused to grant Pearson access to 1122 Makepono's warehouse, a portion of which Canaan Construction was using. Pearson wanted to enter the warehouse to inspect certain cabinets which Canaan Construction claimed it was building for Pearson at that location.[75] 1122 Makepono and R.T. Suiter argued

---

[74] Counts 8, 10, 15, 17, 22, 24, 29, 31, 36, 38, 43, 45, 50, 52, 57, 62, 64, 69, 71, 76, 78, 83, 85, 90, 92, 97, 99, 104, 106, 111, 113, 132, 134, 139, 141, 146, 148, 153, 155, 160, 162, 168, and 170.

[75] *See* section IV.K below.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 32 of 98

that these allegations are insufficient to state a civil conspiracy claim.

Finally, the moving defendants sought dismissal of the "aiding and abetting" claims.[76] They argued that Pearson failed adequately to allege that Suiter committed an intentional tort against Pearson and the moving defendants had actual knowledge of the wrongful conduct, or that the moving defendants gave "substantial assistance" to Suiter in committing his alleged torts and that their own conduct, separately considered, breached a duty owed to Pearson.[77]

I recommend that the district court deny the motion as to the civil conspiracy and aiding and abetting claims. The third amended complaint plausibly alleges enough facts to state those claims.

### C.   Counterclaim and Third Party Complaint Against The Pearsons.

Canaan Construction filed a counterclaim against Pearson[78] alleging the following:

Count 1: Breach of contract for Pearson's failure to pay outstanding amounts under the Contract.

Count 2: Quantum meruit/unjust enrichment because Pearson received the

---

[76] Counts 9, 11, 16, 18, 23, 25, 32, 37, 39, 44, 46, 51, 53, 58, 63, 65, 70, 72, 77, 79, 84, 86, 91, 93, 98, 100, 105, 107, 112, 114, 133, 135, 140, 142, 147, 149, 154, 156, 161, 163, 169, and 171.

[77] Restatement (Second) of Torts § 876(a).

[78] Dkt. 239.

29

benefit of Canaan's work and labor but has not paid in full.

Count 3: Promissory estoppel/detrimental reliance because Pearson made express and implied representations that he would pay for Canaan's work.

Count 4: Tortious interference with Contract because Pearson caused Ferguson Enterprises, a subcontractor of Canaan, to stop doing business with Canaan by making disparaging and defamatory remarks about Canaan.

Count 5: Breach of implied duties of good faith and fair dealing because of Pearson's conduct.

Canaan Construction also filed a third party complaint against Mrs. Pearson[79] alleging substantially the same claims.

### 1. Motions to Dismiss.

The Pearsons filed motions to dismiss the counterclaim and third party complaint in their entirety on various grounds.[80]

### (a) Judicial estoppel.

First, the Pearsons argue that Canaan Construction should be judicially estopped from asserting any claims because Suiter represented to the bankruptcy court that Canaan Construction had no assets.

---

[79] Dkt. 244.

[80] Dkt. 255, 259.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 34 of 98

Judicial estoppel is an equitable doctrine invoked by a court at its discretion to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[81] "In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action."[82]

According to Pearson, Canaan Construction should be judicially estopped from pursuing its counterclaim. This argument suffers from multiple fatal flaws.

First, Canaan Construction made no representations to this court. Suiter, not Canaan Construction, is the debtor in the main case, and only Suiter made representations about his assets. The Pearsons offer no authority for the proposition that, for purposes of judicial estoppel, a statement made by the owner of a company is attributed to the company.

Second, Suiter was required to disclose to this court the value of his assets, which include his shares of stock in Canaan Construction. He stated that his stock in the company was worthless. This is not the same as stating that the company has no assets; rather, it means that the value of the company's assets *minus its liabilities* is less

---

[81] *Ah Quin v. Cty. of Kauai DOT*, 733 F.3d 267, 270 (9th Cir. 2013) (internal quote marks omitted).

[82] *Id.* at 271.

31

than or equal to zero. In other words, Suiter's representation to this court that his stock in Canaan Construction was worthless is not a representation that Canaan Construction has no claims against Pearson.

Third, one premise of the judicial estoppel doctrine is that the debtor has gotten a benefit–usually in the form of a discharge–based on the representation about the debtor's assets. In this case, however, Suiter has not yet gotten his discharge (because Pearson has objected under section 727), and therefore has not benefitted from his representations about his assets.

Therefore, I recommend that the district court deny the motion as to the judicial estoppel theory.

(b)  <u><em>Void contract</em></u>.

The Pearsons also argued that the court should dismiss count 1 of the counterclaim and third-party complaint, for breach of contract, and count 5, for breach of the implied covenant of good faith and fair dealing, because the district court should hold that the contract is void.

The Pearsons are correct. In section IV.D, I explain why the contract violates section 480-2. Under the plain language of Haw. Rev. Stat. § 480-12,[83] the construction contract is unenforceable. Accordingly, the district court should dismiss

---

[83] "Any contract or agreement in violation of this chapter is void and is not enforceable at law or in equity."

32

count 1 of the counterclaim.

The Pearsons also argued that the court should dismiss count 2, for quantum meruit or unjust enrichment, and count 3, for promissory estoppel or detrimental reliance. They point out that, under section 480-13, a contract that is void under chapter 480 is not enforceable "at law *or in equity* [emphasis added]." The Hawaii Intermediate Court of Appeals has held, however, in *Hiraga v. Baldonado*,[84] that a construction contractor may, in these circumstances, recover in quantum meruit. The Pearsons argue that *Hiraga v. Baldonado* was wrongly decided, but I am not persuaded to disregard the ICA's decision. Canaan Construction may or may not be able to prove its equitable claims, but those claims are adequately alleged and not foreclosed by statute.[85] Accordingly, I recommend that the district court deny the

---

[84] 96 Haw. 365, 31 P.3d 222 (Haw. Ct. App. 2001). I discuss this case in more detail in section IV.E.1 below.

[85] "The basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor . . . ." *Maui Aggregates, Inc. v. Reeder*, 50 Haw. 608, 610, 446 P.2d 174, 176 (1968). "When a party derives [a] benefit from services rendered by another, the law reasonably implies a promise to pay on the part of the one who has received such benefit . . . ." *Frost-Tsuji Architects v. Hawaii Inn, Inc.*, Civil No. 13-00496 SOM/BMK, 2013 WL 6145715 at *5 (D. Haw. Nov. 20, 2013).

Claims for unjust enrichment derive from principles of equity. *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1064 (D. Haw. 2010). To recover on an unjust enrichment claim, a plaintiff must prove: (1) the defendant received a benefit without adequate legal basis; and (2) unjustly retained the benefit at the expense of the plaintiff. *Balboa v. Hawaii Care & Cleaning, Inc.*, 105 F. Supp. 3d 1165, 1174 (D. Haw. 2015). In reviewing unjust enrichment claims, courts must be guided by the "underlying conception of restitution, the prevention of injustice." *Id*.

In order to establish a claim of promissory estoppel, "(1) There must be a promise; (2) The

33

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 37 of 98

motion to dismiss counts 2 and 3.

### (c)   *Tortious interference.*

The Pearsons also sought dismissal of count 4, which alleged tortious interference with contract and business relations. The Pearsons claimed that this count could not stand because the alleged interference occurred in November 2014, six months after Canaan Construction admittedly shut down its own business, and because there is no allegation that the Pearsons had any knowledge of the business with which they allegedly interfered.  Canaan Construction responded that, although it ceased operations, it is still an active company and that the Pearsons knew of Canaan Construction's ongoing business relationship with Ferguson Enterprises.

Tortious interference with a contract requires:

(1) a contract between the plaintiff and a third party; 2) the defendant's knowledge of the contract; 3) the defendant's intentional inducement of the third party to breach the contract; 4) the absence of justification on the defendant's part; 5) the subsequent breach of the contract by the third party; and 6) damages to the plaintiff. It is of the essence in an action for wrongful interference with contractual relationships that the plaintiff suffer damages as a consequence of the defendant's conduct, and these damages cannot be speculative or conjectural losses.[86]

---

promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice." *Gonsalves v. Nissan Motor Corp.*, 100 Haw. 149, 164, 58 P.3d 1196, 1211 (2002).

[86] *Ace Quality Farm Products, LLC v. Hanh*, 2015 WL 6955304, at *7 (Haw. Ct. App. Nov. 10, 2015).

34

To prevail on a claim for tortious interference with prospective business advantage, Canaan Construction must establish:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.[87]

The Pearsons argue that the construction contract is void. This is correct (as I recommend in section IV.D) but irrelevant. Party A is not free to interfere with Party B's contract or business dealings with Party C, even if Party A and Party B have no valid contract.

The allegations of count 4 are not ideal but they plausibly allege claims. Therefore, I recommend that the district court deny dismissal of count 4.

### 2. Motion for Partial Summary Judgment on Count 4 of Counterclaim (Intentional Interference with Contract And Business Relations).

Later, the Pearsons filed a motion for partial summary judgment on the same count.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

---

[87] *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 116 (2006).

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 39 of 98

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[88]

Canaan Construction will bear the burden of proof at trial on its counterclaims, and it has had more than adequate time to conduct discovery.

### (a) _Intentional Interference with Contract_.

The six elements of tortious interference with contract are set out in section IV.C.1.(c).

Canaan Construction has failed to prove the first element. It offers no evidence that it had a contract with any of the suppliers whom the Pearsons contacted. Canaan Construction presumably bought materials from the suppliers from time to time, but that does not amount to an ongoing contract.

Canaan Construction has also failed to prove the second element. Canaan Construction has shown that the Pearsons knew it bought materials from the suppliers, but has not shown that the Pearsons knew that Canaan Construction had a contract with any of them.

If Canaan Construction had proven the first two elements (and it has not), there would be a genuine dispute of fact concerning the Pearsons' intentions. There is no direct evidence of their mental state, but summary judgment should rarely be

---

[88] _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986).

36

granted on a question of intent, and the trier of fact might conceivably draw an inference about the Pearsons' intentions from their conduct.

Similarly, if Canaan Construction had proven the first two elements (and it has not), there would be a genuine dispute of fact concerning justification. The Hawaii courts have adopted a rather indefinite definition of justification in this context.[89] The Pearsons declare that they provided only truthful information to the suppliers, and one ordinarily has a privilege to tell the truth, but the scope of this privilege under Hawaii law has not been fully developed.[90] Further, the Pearsons apparently told the suppliers that Canaan Construction owed them money, and the truth of that statement remains to be determined.

Canaan Construction has failed to establish the fifth element. Because Canaan Construction has not offered any evidence that it had a contract with any of the suppliers, it has also not offered evidence that any such contract was breached.

Canaan Construction has failed to prove the sixth element. There is no evidence that the Pearsons' conduct damaged Canaan Contruction. "It is of the essence in an action for wrongful interference with contractual relationships that the plaintiff suffer damages as a consequence of the defendant's conduct, and these

---

[89] *Kutcher v. Zimmerman*, 87 Haw. 394, 407-08 (1998).

[90] *Id.* at 411-12.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 41 of 98

damages cannot be speculative or conjectural losses."[91] By its own admission, its business failed for reasons unrelated to anything the Pearsons said to the suppliers.[92] Suiter's declaration testimony about what some of the suppliers said to him[93] is inadmissible hearsay.

Because Canaan Construction has failed to offer any admissible evidence on some of the elements of the claim for tortious interference with contract, the district court should enter partial summary judgment in favor of the Pearsons on that claim.

### (b)  Intentional Interference with Prospective Business Advantage.

I discuss the five elements of a claim for tortious interference with prospective business advantage in section IV.C.1.(c).

Canaan Construction has failed to create a genuine dispute of fact concerning the first element. It is clear that Canaan Construction had business relationships with the suppliers, but once Canaan Construction's business failed (for reasons unrelated to the Pearsons' contact with the suppliers), there was no "reasonable probability" that the relationships would continue.

---

[91] *Weinberg v. Mauch*, 78 Haw. 40, 50 (1995).

[92] In his declaration, Suiter says that the vendors declined to do business with Canaan Construction *or him*. Any injury he suffered is irrelevant: Canaan Construction is the only counterclaim plaintiff; whatever claims Suiter has belong to his bankruptcy trustee and the trustee has not asserted them.

[93] Dkt. 374 at 8-9.

38

Canaan Construction has established the second element. The Pearsons knew that Canaan Construction did business with the suppliers. In fact, the Pearsons spoke to those suppliers precisely because they thought that Canaan Construction might have ordered materials for their job from them.

As in the case of the claim for interference with contract, there is a genuine dispute of fact concerning the Pearson's intentions.

Causation presents a closer question. According to Suiter, the Pearsons' comments affected Canaan Construction's relations with the suppliers, but the relationship would have been severed anyway when Canaan Construction closed its doors. Because Canaan Construction has not proven other elements of this claim, however, it is not necessary to consider this element further.

Finally, as in the case of the interference with contract claim, Canaan Construction offers no admissible evidence of non-speculative damages.

Because Canaan Construction has failed to offer any admissible evidence to prove some of the elements of its claim for tortious interference with prospective business advantage, the district court should enter partial summary judgment on that claim in favor of the Pearsons.

39

### D. Pearson's Motion for Partial Summary Judgment on Counts 3-5 (UDAP under Haw. Rev. Stat. Ch 444).

Pearson filed a motion for partial summary judgment on counts 3, 4, and 5 of the third amended complaint.[94] Those counts allege (in summary) that Canaan Construction and Suiter failed to provide legally required written and oral disclosures to Pearson before entering into the construction contract, and that this failure is a UDAP violation under Hawaii law.

Count 3 alleges that Canaan Construction and Suiter failed to disclose Pearson's bonding rights and Canaan Construction's lien rights and include a provision in the contract explaining the bonding and lien rights, contrary to Haw. Rev. Stat. § 444-25.5.[95] This count also alleges that Canaan Construction and Suiter

---

[94] Dkt. 75.

[95] Haw Rev. Stat. § 444-25.5 provides:

(a) Prior to entering into a contract with a homeowner, or at the time a homeowner signs a contract, involving home construction or improvements, licensed contractors shall:

   (1) Explain verbally in detail to the homeowner all lien rights of all parties performing under the contract, including the homeowner, the contractor, any subcontractor, or any materialman supplying commodities or labor on the project;

   (2) Explain verbally in detail the homeowner's option to demand bonding on the project, how the bond would protect the homeowner, and the approximate expense of the bond; and

   (3) Disclose all information pertaining to the contract and its performance and any other relevant information that the board may require by rule.

U.S. Bankruptcy Court - Hawaii    #15-90020   Dkt # 449   Filed  11/15/16   Page 44 of 98

failed to include a required contract provision providing that Pearson had waived his rights to the bonding and lien rights disclosures.

Count 4 alleges that Canaan Construction and Suiter failed to identify subcontractors to be used or the approximate percentage of work to be subcontracted as required by Haw. Admin. R. § 16-77-79(a)(3)[96] and Haw. Rev. Stat. § 444-25.5.

----

(b)    All licensed contractors performing home construction or improvements shall provide a written contract to the homeowner. The written contract shall:

    (1)    Contain the information provided in subsection (a) and any other relevant information that the board may require by rule;

    (2)    Contain notice of the contractor's right to resolve alleged construction defects prior to commencing any litigation in accordance with section 672E-11;

* * *

(d)    Any violation of this section shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480, as well as the provisions of this chapter.

[96] Haw. Admin. R. § 16-77-79(a)(3) provides:

(a)    Contractors engaging in home construction or home improvements shall, prior to obtaining a binding contract from the homeowner and prior to applying for a building permit:

    (1)    Disclose all information pertaining to the contract and its performance, the absence of which might mislead the homeowner to the homeowner's detriment including but not limited to the lien rights of labor, suppliers, and subcontractors;

* * *

    (3)    Disclose the approximate percentage of work to be subcontracted;

    (4)    Disclose whether the contractor is bonded or not and whether the owner has a right to demand bonding on the work to be performed; provided that if the contractor is not bonded, the contractor shall disclose the extent of the

41

Count 5 alleges that Canaan Construction and Suiter failed to provide the

Contractor Repair Act notice as required by Haw. Rev. Stat. §§ 672E-11(b)[97] and

§444-25.5(b)(2).

In his opposition,[98] Suiter argued that he made the required disclosures under

§444-25.5. Suiter declared that he met with the Pearsons at least four times between

_____

financial security available to assure performance of the contract; . . . .

[97] Section 672E-11(b) provides:

(a)     Upon entering into a contract for sale of a new structure or the construction or substantial remodeling of a premises, the seller of the new structure shall provide to the purchaser of the new structure, and the contractor of the construction or substantial remodeling of the premises shall provide to the owner of the premises, notice of the contractor's right to resolve alleged construction defects before a claimant may commence litigation against the contractor. The notice shall be conspicuous and included as part of the contract.

(b)     The notice required by subsection (a) shall explicitly reference this chapter, and shall be in substantially the following form:

'CHAPTER 672E OF THE HAWAII REVISED STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT OR OTHER ACTION FOR DEFECTIVE CONSTRUCTION AGAINST THE CONTRACTOR WHO DESIGNED, REPAIRED, OR CONSTRUCTED YOUR HOME OR FACILITY. NINETY DAYS BEFORE YOU FILE YOUR LAWSUIT OR OTHER ACTION, YOU MUST SERVE ON THE CONTRACTOR A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE. UNDER THE LAW, A CONTRACTOR HAS THE OPPORTUNITY TO MAKE AN OFFER TO REPAIR AND/OR PAY FOR THE DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY A CONTRACTOR. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THE LAW, AND FAILURE TO FOLLOW THEM MAY NEGATIVELY AFFECT YOUR ABILITY TO FILE A LAWSUIT OR OTHER ACTION.'

[98] Dkt. 104.

42

September 1 and September 15, 2012, to discuss the various terms of the proposed contract, including bonding and lien rights.[99] He recalled meeting with both Pearson and his wife to review the proposed contract and discuss bonding, performance bond, lien releases, the scope of work, contract price, and other related issues.[100] He specifically disclosed to Pearson that the cost for a performance bond was $14.40 per $1,000 of the contract price. Because obtaining a bond would necessarily increase the contract price above the Pearsons' absolute budget of $1.2 million, Mrs. Pearson declined to obtain a bond.[101]

Suiter also cited provisions of the construction contract. Section A.11.5.1 of the contract sets forth the Owner's (Pearson's) right to require the Design-Builder (Canaan Construction) to furnish bonds.[102] Section A.9.10.2 also delineates protocols for lien releases.[103] Section A.12.2 and subsequent subsections require the Design-Builder to "promptly correct work rejected by the Owner or failing to conform to the requirements of the Design-Build Documents," and mandate that

---

[99] Dkt. 105 at 3.

[100] *Id.* at 4.

[101] *Id.*

[102] Dkt. 106-3 at 28.

[103] *Id.* at 23.

43

such corrections "shall be at the Design-Builder's expense."[104] Suiter argued that this is a much higher standard than the Contractor Repair Act notice in section 672E-11, which allows the contractor only the opportunity to repair before a homeowner may file a lawsuit.

Suiter declared that Canaan Construction provided Pearson with weekly or semi-monthly Field Reports, each of which listed any subcontractors currently involved in the project in the top right corner.[105]

In his declaration, Suiter made a conclusory statement that he, on behalf of Canaan Construction, "provided the disclosures required under [Haw. Rev. Stat.] § 444-25.5."[106] This is partly correct. His declaration is sufficient to create a genuine issue of material fact concerning whether he made the required "verbal" (i.e., oral) disclosures. But the statute requires that all of the required oral disclosures also appear in a written construction contract. The statute also requires a very specific written disclosure of certain dispute resolution rights. Suiter offered no evidence that he or Canaan Construction provided all of the required *written disclosures*.

Specifically, although section A.11.5.1 of the construction contract gives Pearson the right to demand bonding, it does not "explain" Pearson's bonding rights

---

[104] *Id.* at 28.

[105] Dkt. 105 at 5, 106-6 at 2-27.

[106] *Id.* at 3.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 48 of 98

or the lien rights of Canaan Construction and its subcontractors and suppliers, disclose the approximate cost of a bond, or provide that Pearson had waived his rights to the bonding and lien rights disclosures.

Similarly, there is no written disclosure of the approximate percentage of work to be subcontracted. (Pearson argued that Canaan Construction and Suiter were required to disclose the identity of any subcontractors, but neither the statute nor the regulation requires that disclosure.) Canaan Construction and Suiter cite section A.9.10.2 of the Contract, but that section does not disclose the percentage of work to be subcontracted.

Finally, Suiter offers no evidence that he or Canaan Construction provided the Contractor Repair Act notice as required by sections 672E-11 and 444-25.5(b)(2). Section A.12.2 of the Contract does not contain all of the required information.

Therefore, I recommend that the district court enter a partial summary judgment determining that Suiter and Canaan Construction failed to provide the necessary written disclosures and notices, and that therefore these defendants violated section 480-2.[107]

This violation has important implications. First, the construction contract is

---

[107] Haw. Rev. Stat. §§ 444-25.5(d) ("Any violation of this section shall be deemed an unfair or deceptive practice and shall be subject to provisions of chapter 480 . . .").

45

void.[108] Second, Pearson is entitled to damages and attorneys' fees and costs.[109] Third, both Canaan Construction and Suiter are liable.[110]

E.     Pearson's Motion for Partial Summary Judgment on Counts 2
       and 3 of Counterclaim (Change Order 9)

Pearson filed a motion for partial summary judgment on counts 2 and 3 of the counterclaim. In those counts, Canaan Construction sought recovery on quantum meruit and other equitable grounds. Pearson's motion sought to limit Canaan Construction's maximum possible claim.[111] The basic theory of the motion was that Canaan Construction's quantum meruit claim could not include any amounts demanded in Change Order 9, which Pearson never signed.

Section 1.3 of the contract provides that it could only be modified by a change order or other writing.[112]  Section A.4.1.2 of the contract provides that any party seeking, as a matter of right, an adjustment of the contract price, terms, or other provisions had to do so "within 21 days after occurrence of the event giving rise to such claim or within 21 days after the claimant first recognized the condition giving

---

[108] Haw. Rev. Stat. § 480-12 ("Any contract or agreement in violation of this chapter is void and is not enforceable at law or in equity.")

[109] Haw. Rev. Stat. § 480-13(b)(1).

[110] Haw. Rev. Stat. § 480-17.

[111] Dkt. 293.

[112] Dkt. 106-3 at 32, section A.7.2.

46

rise to the Claim, whichever is later."[113] Section A.4.1.5 of the contract provides that, "If [Canaan Construction] wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work."[114]

The parties signed eight numbered change orders and one document called a proposal which was a change order in substance.[115]

Disputes arose among the parties. Pearson disputed the payment applications presented by Canaan Construction and, in late 2013, Canaan Construction stopped work on the project.[116] Later, Canaan Construction presented proposed Change Order 9 to Pearson for execution.[117] Pearson never signed Change Order 9.[118] Canaan Construction claims that Pearson's construction consultant later agreed to it in an email.[119] The Pearsons argue that the consultant's email is an inadmissible settlement communication and deny that the consultant had authority to agree to Change Order

---

[113] *Id.* at 13-14.

[114] *Id.* at 14.

[115] Dkt. 294-3 at 5.

[116] *Id.* at 12.

[117] *Id.*

[118] *Id.*

[119] Dkt. 312 at 2.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 51 of 98

9.[120]

### 1. *Canaan Construction's Equitable Claims under Hawaii Law.*

Hawaii law requires construction contractors to give specific disclosures in writing to homeowners. I have recommended (in section IV.D above) that the district court grant partial summary judgment holding that Canaan Construction did not give Pearson all of the required written disclosures and that, as a result, the construction contract is void.

Under *Hiraga v. Baldonado*, the voidness of the contract does not deprive Canaan Construction of the right to recover from Pearson in quantum meruit.[121] But there is a cap on Canaan Construction's potential recovery:

> [T]he total of the amount of the recovery by the contractor in quantum meruit cannot exceed the net amount calculated as follows: (a) the amount that would have been due such general contractor under the contract had the contract not been void (b) less (i) the amount previously paid to the general contractor, and (ii) the total of the amounts paid and owed to all of the sub-contractors and materialmen who furnished labor or material in the improvement of the real property.[122]

This formula produces a sensible result: if a construction contract is void because the contractor did not comply with the law, the contractor can never recover more than the contractor could have recovered if the contract were valid. If this were

---

[120] Dkt. 321-1 at 3-4.

[121] *Hiraga v. Baldonado*, 96 Haw. 365, 372 (Haw. Ct. App. 2001).

[122] *Id.*

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 52 of 98

not the rule, a contractor who broke the law could earn more than one who did not.

## 2. *Change Order 9 in General.*

The *Hiraga* formula requires the court to calculate how much Canaan Construction could have recovered from Pearson if the contract were valid. The Pearsons argue that Canaan Construction is not entitled to recover the amounts set forth in Change Order 9 under the contract, and that therefore Canaan Construction's maximum recovery on a quantum meruit theory must not include those charges.

I recommend that the district court enter a partial summary judgment determining that the amounts reflected in Change Order 9 may not be included in the *Hiraga* cap on Canaan Construction's possible equitable recovery.

### (a) *Procedural Noncompliance*.

The Pearsons argue that Change Order 9 is invalid in its entirety because Canaan Construction did not give written notice before commencing the additional work and did not timely seek an adjustment of the contract price, in accordance with the contract. Canaan Construction says that the Pearsons authorized all of the work reflected in Change Order 9, but does not deny that Canaan Construction failed to follow the process spelled out in the contract.

At first blush, it seems odd to hold Canaan Construction to the requirements of

49

a void contract. But one must remember that the contract is void because Canaan Construction did not follow Hawaii law. It would be anomalous and unfair to deprive Pearson of the contract's protections because of Canaan Construction's misconduct. Further, the *Hiraga* formula requires the court to determine how much would have been owed under the contract. One cannot determine that amount without also determining whether the contractor complied with the procedural requirements of the contract.

Because Canaan Construction does not deny that it failed to follow the contractual process for change orders and adjustments, Change Order 9 is not enforceable against Pearson, and the amounts claimed in Change Order 9 may not be added to Canaan Construction's maximum quantum meruit recovery.

### (b) *Nonacceptance*.

Canaan Construction argues that the Pearsons are bound by Change Order 9. Pearson never signed Change Order 9. Canaan Construction argues, however, that a construction consultant retained by Pearson sent an email to Suiter in which the consultant agreed to Change Order 9,[123] and that the consultant's agreement is binding on Pearson. The Pearsons respond in several ways.

First, the Pearsons point out that, under the contract, Pearson was the

---

[123] Dkt. 312-1 at 2.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 54 of 98

"Designated Representative" of the owner, and the consultant never became a "Designated Representative."[124] But the contract does not say that the Designated Representative is the only person with authority to bind the party.

Second, the Pearsons point out that, under Hawaii law, a construction contract must be in writing and signed by the owner.[125] This argument rests on the unstated assumption that the statute displaces the normal common law rules that a party may act through an agent. The Pearsons offer no authority for this proposition.

Third, the Pearsons argue that the consultant's email is a settlement communication that is inadmissible under Fed. R. Evid. 408.[126] I disagree. The rule makes settlement offers inadmissible for certain purposes, but it does not exclude proof that the parties actually agreed to settle some or all of the claims in the case.[127]

But Canaan Construction's argument rests on a partial, cherry picked, out of context quotation from the consultant's email. Read in its entirety, it is clear that the

---

[124] Dkt. 321 at 4.

[125] *Id.*

[126] Dkt. 321 at 4-5.

[127] **"**It is well established that this rule does not exclude evidence related to a settlement when it is offered for the purposes of interpreting or enforcing the settlement." *Marshak v. Vidov (In re Vidov)*, 2014 WL 3766721, at *6 (9th Cir. B.A.P. July 31, 2014) (*citing* Advisory Committee Notes accompanying 2006 amendments to Evidence Rule 408; *Coakley & Williams v. Structural Concrete Equip.*, 973 F.2d 349, 353–54 (4th Cir.1992)); *and Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 691 (7th Cir.1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.").)

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed   11/15/16   Page 55 of 98

consultant was discussing a possible global resolution of the dispute between Pearson and Canaan Construction. It is not reasonable to read the email as accepting Change Order 9 in the absence of a mutually acceptable global resolution (which never came to pass). Regardless of whether the consultant had actual or apparent authority to bind Pearson to Change Order 9, it is clear beyond any genuine dispute that the consultant did not intend to bind Pearson to Change Order 9 in the absence of a complete settlement. Therefore, summary judgment on those points should be granted.

### 3. *Pearson's Specific Objections to Change Order 9.*

Pearson also objects to most of the specific items claimed in Change Order 9. If the district court accepts my recommendation and enters a partial summary judgment determining that Change Order 9 must not be included in the cap on Canaan Construction's possible equitable claims, then Pearson's specific objections would be irrelevant. But, if the district court rejects that recommendation, I recommend that the district court enter a partial summary judgment concerning some of those subsidiary issues.

### (a) *"Free" Work.*

The Pearsons argue that Suiter represented that Canaan Construction would not charge for much of the work described in Change Order 9 (the pool equipment pad, the extension of stairs, and the sweet filters). Canaan Construction does not

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed   11/15/16   Page 56 of 98

respond to this argument. Even assuming that Change Order 9 is enforceable against Pearson at all, the Pearsons are entitled to partial summary judgment on this point.

### (b) *Plumbing Fixtures*.

The Pearsons claim that Canaan Construction agreed to provide the plumbing fixtures for a flat amount of $25,000 plus $4,774.10 documented in Change Order 1, and that the claim in Change Order 9 for an additional $19,489.88 for the plumbing fixtures is unauthorized. Suiter repeatedly confirmed that Canaan Construction would charge $25,000 for the plumbing fixture package (plus the additional amount agreed to in Change Order 1) regardless of its cost.[128] Suiter's explanation of Canaan Construction's change of position is nonsensical:

> On the plumbing fixture line item # 2, there was an allowance for plumbing fixtures up to $25,000 but Julia Pearson did not follow the agreement and exceeded the agreement with her expensive plumbing upgrades.[129]

This statement completely ignores Suiter's repeated statements that Canaan Construction would provide the plumbing package for $25,000 plus the Change Order 1 amount, even though the actual cost was higher. Even if Change Order 9 is enforceable against Pearson, the Pearsons are entitled to summary judgment on this point.

_____

[128] Dkt. 294-44, -45.

[129] Dkt. 312 at 7.

## (c) *Incomplete Work*.

The Pearsons argue that Canaan Construction never completed many of the items described in Change Order 9. Canaan Construction concedes that this argument is partly correct; it says that "Change Order #9 includes work completed on the Pearson residence as well as work not yet finished, but was in progress . . . ."[130] Canaan Construction does not state the value of the work that was incomplete but "in progress" on the date of termination.

Assuming that Canaan Construction is entitled to recover for any of the work covered by Change Order 9, there is a genuine dispute of material fact concerning the amount (if any) that Canaan Construction would be entitled to recover under the contract for the work that was incomplete but "in progress" at the date of termination. (To the extent Canaan Construction is not entitled to recover for such work under the contract, its maximum quantum meruit recovery must also be reduced.)

## (d) *Waiver pursuant to Pay App 12*.

The Pearsons contend that, when Pearson agreed to drop his objections and pay the amounts requested in Pay App 12, Canaan Construction agreed to waive some or all of the claims covered by Change Order 9. But the email exchange which the

---

[130] Dkt. 312 at 3, 312-1 at 6-17.

54

Pearsons cite is cryptic at best.[131] Genuine disputes of material fact preclude summary judgment on this point.

*(e)      Retaining Wall Waterproofing.*

Pearson contends that Canaan Construction is not entitled to charge for repairs to a retaining wall because it had given Pearson a warranty of the "structural integrity" of the same wall.

Pursuant to a proposal dated November 18, 2012, and covered by Change Order 1, Canaan Construction installed micropiles to address possible movement of a retaining wall. Canaan Construction provided a "warranty [of] the structural integrity of the CMU repaired wall as long as the Pearsons, Tom, Julia, and Alicia own the home."[132]

During October 2013, water began to leak through the retaining wall. Canaan Construction determined that "some of the waterproof barrier that was applied by Canaan Construction LTD on this Main Retaining Wall last year was delaminating. . . . [T]he waterproofing on the street side of the Main Retaining wall has failed since it was applied when the wall was built. The Hydrostatic pressure is too much for the inside membrane to hold."[133] Canaan Construction brought in a

---

[131] Dkt. 295-15.

[132] Dkt. 294-8 at 2. Alicia is presumably Pearson's daughter.

[133] Dkt. 295-5 at 1.

55

subcontractor, at a cost of about $17,000, to inject a polyurethane sealant into the wall. Pearson argues that this work is covered by the warranty and that he should not have to pay for it.

There is a genuine dispute of material fact concerning the meaning of the term "structural integrity" in the warranty. One could read the term narrowly as a promise that the wall would not collapse; the record does not establish that the wall would have fallen down if the additional sealing were not done. One could also read the term more broadly and include watertightness as an aspect of "structural integrity;" this reading would be particularly plausible if it were shown that water leaks could have undermined the foundation of the wall. But I can not exclude either of these interpretations on this record. Summary judgment on this point should be denied.

F.    Motion for Partial Summary Judgment on UDAP Claims.

Pearson filed a motion for partial summary judgment on counts 6, 13, 20, 27, 34, 41, 48, 55, 60, 67, 74, 81, 88, 95, 102, 109, 116, 130, 137, 144, 151, 158, 165, and 168 of the third amended complaint.[134] These counts allege that Canaan Construction and Suiter violated Haw. Rev. Stat. § 480–2 by:

(1) failing to disclose to Pearson, when Canaan Construction entered into a construction contract with Pearson, that Canaan Construction was subject to

---

[134] Dkt. 357.

numerous unpaid tax liens;

(2) using a letterhead during the design phase of the project that used a name other than that of Canaan Construction;

(3) offering to complete the job for $1.2 million, while knowing that the job would actually cost much more;

(4) submitting false payment applications; and

(5) billing and receiving payment for labor and supplies that Canaan Construction never provided.

Count 168 of the third amended complaint alleges that Canaan Construction, Suiter, Canaan Builders, and R.T. Suiter also violated section 480-2 by:

(6) submitting an offer to complete the job, after Canaan Construction had closed its doors, for an additional $682,883.

The defendants deny most of Pearson's factual predicates.[135] They claim that:

(1) Canaan Construction had made arrangements to satisfy the lien claims such that they would not prevent Canaan Construction from completing the job, and in any event construction contractors do not owe a duty to disclose liens to their clients;

(2) Suiter used obsolete letterhead due to inadvertence and with no intention to deceive, and because the construction contract contained the correct name, Pearson

---

[135] Dkt. 380, 383.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 61 of 98

was not misled;

(3) Canaan Construction did not underbid the job; the increases in cost were due to Pearson's delays and demands for upgrades and changes;

(4) and (5) Pearson knew and agreed that the payment applications did not accurately reflect the actual state of completion of the job, and that Canaan Construction was "billing ahead" to cover the cost of extras demanded by Pearson; and

(6) the offer to complete the work was made by Canaan Builders, a separate company controlled by R.T. Suiter, not by Suiter or Canaan Construction, was made at the request of a representative of Pearson, and was not wrongful.

I recommend that the district court deny this motion because there are many genuine disputes concerning the factual question of whether the defendants' conduct was "unfair" or "deceptive." I find much of Suiter's testimony implausible, but the court may not weigh conflicting evidence on a motion for summary judgment unless one side's evidence is so weak that the court would not even present it to a jury, and that exception does not apply here.

### G. Pearson's Motion for Partial Summary Judgment on Counts 127 and 128 (Sections 727(a)(2)(A) and (a)(4)(A)).

Pearson filed a motion for partial summary judgment on counts 127 and 128 of

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 62 of 98

the third amended complaint.[136] Those counts allege that Suiter transferred assets with the intent to hinder or defraud creditors satisfying section 727(a)(2)(A), and uttered false oaths in the bankruptcy case satisfying section 727(a)(4)(A).

### 1. Section 727(a)(2)(A).

Under section 727(a)(2)(A), the bankruptcy court may not grant a discharge if the debtor transferred "property of the debtor" within one year before he filed for bankruptcy with the intent to hinder, delay, or defraud creditors.[137] Courts construe section 727 "liberally in favor of debtors and strictly against parties objecting to discharge."[138] The plaintiff's reasons for objecting to discharge "must be real and substantial, not merely technical and conjectural."[139] The objector must prove its case by a preponderance of the evidence.[140]

Section 727(a)(2)(A) can apply when a debtor deposits paychecks into a bank account in his wife's name, and over which he has no control, in order to "diminish the amount of money creditors would be able to obtain from a judgment against

---

[136] Dkt. 78.

[137] 11 U.S.C. § 727(a)(2)(A).

[138] *Retz v. Sampson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996)).

[139] *In re Chu*, 511 B.R. 681, 684 (Bankr. D. Haw. 2014)(citing *Commerce Bank and Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 137 (1st Cir. 1992)(quoting *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir.1934))).

[140] *Retz*, 606 F.3d at 1197.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 63 of 98

him."[141]

Suiter testified that when he received a paycheck from Canaan Construction and, after that company ceased doing business in June 2014, for work as a handyman, he would either cash the check or sign it over to his wife so she could deposit it in her checking account.[142] The trustee questioned Suiter about this practice during the meeting of creditors, asking, "[W]hy do you put it into her account?"[143] Suiter responded, "I – you know, my initial concern was that if the IRS got funky with me, and they would, you know, garnish my accounts. So I just didn't want to have that happened, so."[144] The trustee followed up, asking, "[Y]ou wanted to safeguard it?" The debtor responded, "Yes."[145] The trustee pursued the matter further, saying "[S]o it couldn't get garnished." Suiter again responded, "Yes."[146]

Suiter and his attorney both have submitted declarations stating that, during meetings with the IRS in an attempt to resolve Suiter's tax liabilities, they told the IRS agents that Suiter did not have a personal bank account and that "I was depositing

_____

[141] *In re Kontrick*, 295 F.3d 724, 736-37 (7th Cir. 2002).

[142] Dkt. 79-4 at 15.

[143] Dkt. 3 79-5 at 8.

[144] *Id.*

[145] *Id.* at 9.

[146] *Id.*

60

funds into an account owned solely by my wife."[147]

Suiter does not deny that, when he deposited his paychecks into his wife's account, he transferred "property of the debtor," and that these transfers occurred within one year before his bankruptcy filing. Suiter also does not attempt to contradict or explain away his testimony at the meeting of creditors that he did so in order to avoid a possible garnishment by the IRS. He says, however, that he and his attorney told the IRS about this practice. This testimony does not negate his intent to hinder the IRS. In the first place, Suiter does not say when he told the IRS that he was depositing his paychecks in his wife's account, so the practice could have been going on for some time before he made the disclosure. Further, despite disclosure, the fact that the money was in his wife's account would have made it more difficult for the IRS to garnish that account. It is much easier to garnish an account in the name of the debtor than it is to garnish an account in someone else's name, even if that account may hold funds belonging to the debtor. In other words, even if Suiter told the IRS about the deposits, his practice of stashing his money in his wife's account still hindered the IRS.

Pearson is therefore entitled to partial summary judgment on this issue.

---

[147] Dkt. 169 at 2.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 65 of 98

## 2. Section 727(a)(4)(A).

Section 727(a)(4)(A) provides that the court may not grant a discharge if the debtor "knowingly and fraudulently in connection with the [bankruptcy] case . . . made a false oath or account . . . ."[148] To prevail on this claim, Pearson must prove four elements: "'(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'"[149]

Providing false information, or failing to provide required information, in the debtor's schedules or statement of financial affairs can be a false oath within the meaning of section 727(a)(4)(A).[150]

Although the text of section 727(a)(4)(A) does not mention a materiality requirement, judicial interpretations have imposed one. It is settled, however, that "[m]ateriality is broadly defined."[151] A relatively low standard of materiality is appropriate because the bankruptcy system depends heavily on accurate self-reporting

---

[148] 11 U.S.C. § 727(a)(4)(A).

[149] *Retz*, 606 F.3d at 1197 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005)).

[150] *Kluge v. KHI/10223 Sepulveda, LLC (In re Kluge)*, 2013 WL 1459274, at *3 (B.A.P. 9th Cir. Apr. 10, 2013).

[151] *Fogal Legware of Switzerland, Inc., v. Wills (In re Wills)*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999).

62

by debtors. The potential for a denial of discharge helps to "insure that the trustee and creditors have accurate information without having to conduct costly investigations."[152]

In general, "[a] false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property."[153] The omission need not relate to assets; omissions regarding income can also be material.[154]

The test of materiality is not limited to the dollar value of the undisclosed items. Therefore, "[a] false statement or omission may be material even if it does not cause direct financial prejudice to creditors."[155] This is not to say that value is irrelevant: the omission of an asset that is of little or no value, or that would not be property of the estate, might not be material. "However, an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the

---

[152] *Id.* at 63.

[153] *Id.* at 62.

[154] *See e.g. In re Kluge*, 2013 WL 1459274, at *4 (B.A.P. 9th Cir. Apr. 10, 2013) (citation omitted).

[155] *Id.* at 63.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 67 of 98

estate."[156] Stated another way, a false statement or omission is material unless it "has no impact on a bankruptcy case . . . ."[157]

A debtor "knowingly" makes a false oath "if he or she acts deliberately and consciously," rather than carelessly or recklessly.[158]

In order to establish that the debtor made false oaths "fraudulently," the objector must show that the debtor "made them with the intention and purpose of deceiving the creditors . . . ."[159] Circumstantial evidence is admissible to prove fraudulent intent. The debtor's reckless indifference to the truth can support an inference of fraudulent intent.[160]

I now must apply these definitions to each of the statements which Pearson identifies.

First, Pearson claims that Suiter made three different statements about the date on which Canaan Construction ceased operations. In his statement of financial affairs, Suiter swore that the "ending date" of Canaan Construction was "5-2014."[161] But at

---

[156] *Id.*

[157] *Id.*

[158] *Retz*, 606 F.3d at 1198.

[159] *Roberts*, 331 B. R. at 884.

[160] *Khalil v. Dev. Sur. & Indemn. Co. (In re Khalil)*, 379 B.R. 163, 173-75 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009).

[161] Dkt. 79-3 at 12-14.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 68 of 98

his meeting of creditors, Suiter testified that "end of June is when we officially just stopped."[162] Later, Suiter agreed that "the company still exists."[163] There is no evidence that the third statement is false: a company can continue to exist as a legal entity long after it ceases operations. The discrepancy between the first and second statements suggests that at least one of them is false, but there is no evidence that the question whether Canaan Construction ceased operations in May or June of 2014 had any impact on the administration of his bankruptcy estate. Therefore, those statements are not material. Similarly, there is no evidence that the discrepancy was deliberate as opposed to careless, so Pearson has not shown that the statements were "knowingly" false. Finally, there is no evidence that Suiter gave his varying testimony about the "ending date" of Canaan Construction with the intent to deceive anyone. Therefore, partial summary judgment on this contention must be denied.

Second, Pearson points out that, in his schedule I, Suiter swore that he was self-employed on the date of his bankruptcy filing (in January 2015) and had been self-employed for two months. Pearson claims that, in truth, Suiter was employed by Canaan Builders at that time. At his meeting of creditors, Suiter testified that he worked as an independent contractor for Canaan Builders beginning in November

---

[162] Dkt. 79-4 at 13.

[163] Dkt. 79-6 at 8-9.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 69 of 98

2014 and did not become an employee of that company until March 2015. Pearson argues that this cannot be true because Suiter became the "Principal Responsible Managing Employee" of Canaan Builders on July 23, 2014.[164] Therefore, Suiter's statement about the commencement date of his employment with Canaan Builders may have been false. But Pearson offers no evidence that this statement had any effect on the administration of Suiter's bankruptcy case, that Suiter knew the statement was false, or that Suiter intended to deceive his creditors. Therefore, partial summary judgment on this contention must be denied.

Third, Pearson argues that Suiter stated in schedule I that his wife's income was only $350 per month but said in his meeting of creditors that she makes about $1,000 per month. Suiter claims that he misspoke during the meeting of creditors, that her income had fallen, and that the figure listed in schedule I was correct.[165] Pearson offers no evidence that the statements about Mrs. Suiter's income had any effect on the administration of Suiter's bankruptcy case, that Suiter knew either statement was false, or that Suiter intended to deceive anyone. Pearson also points out that, in his 2003 bankruptcy case, Suiter stated that his wife earned $1,973.50. This proves almost nothing; one cannot simply assume that Mrs. Suiter's income remained constant over

---

[164] Dkt. 79-8 at 1.

[165] Dkt. 108 at 3.

66

a twelve year period, especially where that period included the worst economic downturn in the last sixty years. Therefore, partial summary judgment on this contention must be denied.

Fourth, Pearson claims that Suiter failed to disclose rental income in his statement of affairs. According to Suiter's unrebutted declaration, however, the properties which generated the income did not belong to Suiter, but rather to his wife's trust.[166] It is true that Suiter benefitted from that income because the rental proceeds were used in part to pay mortgages on which Suiter was liable, but that does not mean that the proceeds of property which he did not own were "income" which Suiter had to report in his bankruptcy schedules. Thus, Pearson has failed to show that this omission amounted to a false statement, let alone one that Suiter made knowingly or with intent to deceive. Therefore, partial summary judgment on this contention must be denied.

Fifth, Pearson points out that Suiter failed to disclose in his schedules and statement of affairs that he had been depositing his checks into his wife's bank account. Pearson claims that Suiter should have disclosed this in response to question 7 of the statement of financial affairs, which requires debtors to disclose gifts to family members of more than $200. Suiter responds to this only indirectly, saying that the

---

[166] *Id; see* section IV.I below.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 71 of 98

funds in his wife's account were used for "the payment of joint household expenses and debts for which I am personally liable."[167] At his meeting of creditors, in response to a leading question, Suiter agreed that these payments were basically gifts to his wife.[168] Accepting Suiter's testimony that all of the funds in the account were used for household expenses (and there is no evidence to the contrary), Suiter was probably incorrect when he characterized the payments as gifts to his wife.[169] Therefore, there is a genuine dispute of fact concerning whether the statement was false. Further, there is no evidence that Suiter knew that it was false, that he intended to deceive anyone, or that the false statement had any adverse effect on the administration of his bankruptcy case. Therefore, partial summary judgment on this point should be denied.

Sixth, Pearson points out that, in his 2003 bankruptcy case, Suiter indicated that he had a pension account with a value of $8,200, but no pension plan was listed in his 2015 bankruptcy filing. Suiter testifies in his declaration that he cashed out his pension plan in the twelve year period between the two bankruptcy cases. Pearson offers no evidence to the contrary. Thus, Pearson has offered no evidence that Suiter

---

[167] Dkt. 108 at 4.

[168] Dkt. 79-4 at 10.

[169] Arguably, Suiter should have disclosed these payments in response to question 10.a of the statement of financial affairs, but the record does not indicate whether the transfers to the wife's bank account were made "in the ordinary course of the . . . financial affairs of the debtor . . . ." Therefore summary judgment is still unwarranted.

68

made a false statement in this respect and partial summary judgment on this point must be denied.

Seventh, Pearson argues that Suiter failed to disclose the assets of Canaan Construction. The schedules required Suiter to identify and value all assets he owns, including his ownership of separate legal entities, but did not ask him to list or value the assets of those separate legal entities. In this case, Suiter disclosed his ownership of Canaan Construction and claimed that his ownership interest in the company was worthless. There is no evidence that these statements were false. Thus, partial summary judgment must be denied.

Finally, Pearson argues that Suiter made a false statement when he did not provide any information in response to question 10.b of the statement of financial affairs, which requires the debtor to "[L]ist all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary."[170] The parties agree that, in 2008, Suiter and his wife transferred several properties to a trust of which Suiter was a beneficiary and Mrs. Suiter was the settlor. Because Suiter was apparently not the settlor of the trust, the trust is not a "self-settled trust" in the ordinary meaning of that phrase. Because neither party provided a copy of the trust agreement

---

[170] Dkt. 79-3 at 17.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 73 of 98

when this motion was submitted, it was impossible to determine whether the trust is a "similar device" within the meaning of the statement of financial affairs. Therefore, I denied partial summary judgment. (Pearson later filed another motion for partial summary judgment on this count; I discuss that motion in section IV.I below.)

## H. Pearson's Motion for Summary Judgment on Count 129 (Section 727(a)(3)).

Pearson filed a motion for summary judgment as to count 129 of the third amended complaint.[171] That count alleges that Suiter failed to keep or preserve books, documents, records, or papers from which his financial condition or business transactions might be ascertained, and that Suiter is not entitled to a discharge under section 727(a)(3).

Pearson states that between 2012 and 2014, Canaan Construction had its accounting done in house by a bookkeeper. The accounting included billings for jobs and payments made to subcontractors and suppliers. Pearson alleges that after Canaan Construction shut down in May 2014, Suiter simply threw away the bookkeeper's computer.

The third amended complaint alleges that Suiter purchased Canaan Construction from his father in 2006 for $2,500,000 but the agreement was never formalized. Suiter admitted that he stopped making payments in 2007. He was

---

[171] Dkt. 145.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 74 of 98

unable to state how much he paid or how much he still owed.

The complaint further alleges that, despite repeated requests, neither Canaan Construction nor Suiter have produced Canaan Construction's general checking account ledger, bank account statement and deposit slips, records of labor expenses, contracts evidencing any other projects that were in progress, records of payments received, loans, advances made to third parties, or communications between the defendants regarding the Pearson project.

Suiter opposed Pearson's motion and filed a countermotion.[172]

Suiter claimed that, although he no longer had the computer, the records were backed up onto a server and would be produced once a protective order is in place. Suiter said that he did not hide the fact that he bought Canaan Construction, and the transaction occurred too long ago to have a bearing on the bankruptcy case.[173]

I discuss the legal standard applicable to section 727(a)(3) in section IV.B.1.(c) above.

I denied this motion. Suiter represented that the records on the computer were backed up to a server; if that proves true, the disposal of the computer could be unimportant. Pearson has not shown that the records concerning Suiter's purchase of

---

[172] Dkt. 171, 172.

[173] Dkt. 173.

71

Canaan Construction from his father meet the statutory standard; the purchase transaction and the last payment occurred many years before the bankruptcy filing. The absence of records of such an old transaction does not make it "impossible" to ascertain Suiter's financial condition. Considering the limited discovery that had been conducted when the motion was heard, there was not enough information in the record to permit me to ascertain what records were truly missing and the significance, if any, of those records. (Pearson later filed another motion for partial summary on these counts, which I discuss in the following section.)

I.    Motion for Partial Summary Judgment on Counts 128 & 129 of Third Amended Complaint (Sections 727(a)(3) and (A)(4)(A).)

Counts 128 and 129 of the third amended complaint contend that the court must deny Suiter's discharge because he allegedly concealed, destroyed, or failed to keep records from which his financial condition could have been ascertained, within the meaning of section 727(a)(3), and uttered false oaths in the bankruptcy case satisfying section 727(a)(4)(A). Pearson filed a motion for summary judgment on those counts.[174]

In this motion, Pearson relied on two missing sets of documents to substantiate his section 727(a)(3) claim. I discuss the applicable legal standard in section IV.B.1.(c) above.

---

[174] Dkt. 344.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 76 of 98

The first is Canaan Construction's unfiled tax returns for 2012-14. Suiter acknowledged that his now-defunct company, Canaan Construction, did not file tax returns for 2012-2014.[175] In appropriate circumstances, section 727(a)(3) can apply to the records of an entity controlled by the debtor.[176] Further, under its plain language, the statute can apply to the failure to create records as well as the failure to preserve records. But I denied partial summary judgment on this point because the record might support a finding that the failure to file tax returns was justified by the inability of Canaan Construction to pay a tax preparer. (It is undisputed that Canaan Construction ceased doing business in 2014 after suffering significant financial problems. Pearson's own complaint alleges that the company was insolvent as early as 2012.)

The second set of documents on which Pearson relied is Canaan Construction's checking account statements. Suiter acknowledged that his counsel did not initially produce to Pearson copies of Canaan Construction's checking account statements.[177] His counsel declared that this is due to his oversight which he discovered and

---

[175] Dkt. 389 at 6.

[176] *Lissack Enters., Inc. v. Braidis (In re Braidis)*, 27 B.R. 470, 473 (Bankr. E.D. Pa. 1983); 6 Collier on Bankruptcy ¶ 727.03[3][e] (16th ed. 2016) ("Thus, when the debtor destroys, conceals or falsifies books of a partnership or corporation that are necessary to proper understanding of the debtor's financial condition and business transactions, a discharge should be denied.").

[177] Dkt. 389 at 6.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 77 of 98

corrected at about the same time that he filed his opposition to the motion.[178] Pearson said (in a memorandum not supported by a declaration) that the production still included only the first page of the monthly checking account statements, each of which consists of multiple pages.[179] I denied partial summary judgment on this point because Suiter's counsel said that the statements were produced, albeit late, and Pearson's denial of that assertion was not under oath.

As I discuss in section IV.G.2 above, section 727(a)(4)(A) relates to false oaths in a bankruptcy case. The false oaths on which this motion relied are Suiter's failure to disclose an interest in the property of Mrs. Suiter's trust and the transfer of Suiter's interest in certain property to the trust.

On February 11, 2008, Suiter's wife, Mary Suiter, created a trust to facilitate the estate plan of Suiter and herself. Shortly thereafter, Suiter and Mrs. Suiter transferred two pieces of real property, including their residence, to the trust. Neither party has provided a copy of the trust agreement, apparently because the copy which Suiter produced to Pearson is nearly illegible. In response to requests for admissions, Suiter admitted that (1) Mrs. Suiter is the settlor, initial trustee, and primary lifetime beneficiary of the trust; (2) he is the successor trustee of the trust, the sole beneficiary

---

[178] Dkt. 391 at 3.

[179] Dkt. 407 at 7.

74

of the marital trust after his wife passes, and the beneficiary (along with his children) of the family trust; (3) the trustee has discretion to use the net income and principal of the trust in the best interests of Suiter and Mrs. Suiter; and (4) the trust gives Suiter the right, during Mrs. Suiter's lifetime, to occupy and use the residence.[180] Pearson says, and Suiter does not deny, that (1) the rental income from the trust's properties is used to pay the mortgages on those properties, for which he is personally liable; (2) to the extent that the rental income is insufficient to pay the mortgage payments, he supplies the necessary money; and (3) the trust property was used as collateral for a loan to his business.

Suiter did not list the trust's real estate on his schedule A or statement of financial affairs based on his attorneys' advice. Suiter's counsel says that he decided that Suiter did not need to disclose the real property on schedule A because counsel "generally only list[s] property on a debtor's Schedules if the debtor's name is actually on title to said property."[181] But schedule A requires the debtor to "list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the

---

[180] Dkt. 345-6.

[181] Dkt. 391 at 3.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed   11/15/16   Page 79 of 98

debtor's own benefit."[182] Thus, schedule A is not supposed to be limited to property to which the debtor has record title. But an interest in a trust that owns real property is not ordinarily considered an interest in real property; instead, trust interests should be disclosed as personal property on schedule B line 20 ("contingent and noncontingent interests in . . . [a] trust"). Suiter did have a variety of interests in Mrs. Suiter's trust, as a beneficiary of the trust contingent upon him surviving his wife, as a person entitled to occupy one of the trust's properties (the residence), and as a person whose debts the trust was paying and securing. Therefore, Mrs. Suiter's trust should have been disclosed on schedule B, but it was not.

Suiter says that he disclosed the circumstances to, and relied on the advice of, his counsel when he completed his schedules.[183] This is sufficient to create a genuine dispute of fact concerning whether the omission was knowing and fraudulent.[184]

Finally, Pearson argues that Suiter made a false statement when he did not provide any information in response to question 10.b of the statement of financial affairs, which requires the debtor to "list all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust

---

[182] Dkt. 345-2 at 3.

[183] Dkt. 389 at 4.

[184] I have permitted Suiter's bankruptcy counsel, who is also his trial counsel in this adversary proceeding, to withdraw on the grounds that he is a necessary witness at trial and that Suiter is not paying his counsel.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 80 of 98

or similar device of which the debtor is a beneficiary."[185] Because Suiter was not the named settlor of the trust, the parties agree that the trust is not a "self-settled trust" in the ordinary meaning of that phrase. There is no statutory or case law definition of the term "similar device." In my view, where a debtor contributes property to a trust of which his wife is the sole settlor, and the debtor retains significant benefits from that property, the trust should be treated as a "similar device." A debtor should not be able to evade the disclosure requirements for self-settled trusts by the simple expedient of using a trust set up by a spouse. But Suiter says that he relied on his counsel to prepare his statement of financial affairs, and his counsel says that he did not think it necessary to disclose the trust because it was "only self-settled with respect to Suiter's wife."[186] This again raises a genuine question about whether the omission was "knowing" and "fraudulent." Therefore, partial summary judgment should be denied.

J.    Pearson's Motion for Partial Summary Judgment on Count 21
      (The Window Claims).

Pearson filed a motion for partial summary judgment on Count 21. That count alleges that Suiter committed fraud when he, on behalf of Canaan Construction, charged Pearson for certain work on windows that was never completed, and that his liability is not dischargeable under section 523(a)(2).

---

[185] Dkt. 79-3 at 17.

[186] Dkt. 391 at 3.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 81 of 98

The contract specifications required Canaan to order and install "top of the line Fleetwood window and door systems."[187] The construction schedule represented that the windows would be installed between February 1, 2013 and February 8, 2013.[188] In an email dated August 27, 2012, Suiter stated that the cost of the windows was $135,500.00.[189]

The contract provided that Canaan Construction would submit monthly applications for payment ("Pay Apps").[190] The Pay Apps were to be based on "the percentage completion of each portion of the Work and "materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction . . . ."[191] The contract further provided that, "in taking action on [Canaan Construction's] applications for payment, [Pearson] shall be entitled to rely on the accuracy and completeness of the information provided furnished by [Canaan Construction] and shall not be deemed to have made a detailed examination, audit or arithmetic verification of the documentation submitted . . . or other supporting data; to have made exhaustive or continuous on-site inspections; or to have made

---

[187] Dkt. 82-4 at 48-49.

[188] Dkt. 82-7 at 2.

[189] Dkt. 82-8 at 2.

[190] Dkt. 82-4 at 5-6.

[191] *Id.*

78

examinations to ascertain how or for what purposes [Canaan Construction] has used amounts previously paid on account of the agreement."[192]

Each Pay App included a statement signed by Suiter on behalf of Canaan Construction that "the undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the work covered by this Application for Payment has been completed in accordance with the Contract Documents . . . ."[193] Pearson relied on the representations in each Pay App (as the contract provided) when he paid Canaan Construction.[194]

Suiter, on behalf of Canaan Construction, delivered to Pearson several Pay Apps representing that portions of the window work had been completed.[195]

| Pay App | Date | Window Work Done During Period | Cumulative Window Work Done |
|---------|------|-------------------------------|------------------------------|
| 4 | 1/24/13 | $67,750 (50% deposit) | $67,750 |
| 9 | 6/30/13 | $33,875 | $101,625 |
| 11 | 8/31/13 | $12,000 | $113,625 |
| 12 | 9/30/13 | $5,000 | $118,625 |

---

[192] *Id.* at 5.

[193] *Id.* at 3; Dkt. 82-10; 82-18; 82-20; and 82-23.

[194] Dkt. 82-1 at 7.

[195] Dkt. 82-18 at 4; 82-21 at 4; 82-23 at 4.

79

Pearson paid the amounts requested in Pay App 4, 9, 11, and 12.[196]

Each Pay App represented that the total scheduled value of the windows order and installation was $135,500.00.[197] Thus, Pay App 12 represented that Canaan Construction had completed slightly more than 87% of the work on the windows.[198]

Suiter, on behalf of Canaan Construction, also provided to Pearson numerous "field reports," which falsely implied that the windows were "completed and stored to date."[199] In an October 7, 2013 email, Suiter represented that installation of the windows was underway.[200] In an email dated January 25, 2013, with Pay App 4, Suiter represented that a 50% deposit of $67,750.00 was required before the window supplier would start preparing the shop drawings and that he was "going to initiate the order now."[201]

The representations in the Pay Apps and field reports were false. The windows were never installed at the project or delivered to the project site. It is not clear that Suiter had any intention to "initiate the order now" when he represented such in his

_____

[196] Dkt. 82-11; 82-20; 82-22; and 82-25.

[197] Dkt. 82-18 at 4; 82-21 at 4; and 82-23 at 4.

[198] Dkt. 82-23 at 4.

[199] Dkt. 82-12; 82-13; 82-14; 82-15; and 82-16.

[200] Dkt. 82-24 at 4.

[201] Dkt. 82-10 at 1.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed   11/15/16   Page 84 of 98

January 25, 2013 email. Suiter never made the deposit for the windows as he represented on January 25, 2013.[202]

Suiter admits that, "The Pay Apps did not accurately reflect the work progress as of the date of each Pay App due to the numerous delays to the project by the Pearsons and not making timely approvals and repeated requests for free work and numerous upgrades to the project."[203] This statement is gibberish; even if the Pearsons delayed the project, Suiter could and should have told the truth on the Pay Apps.

Suiter also says that the Pearsons were aware that the Pay Apps were not accurate and that "the Pay Apps would bill in advance for work not yet then completed."[204] Pearson denies this.

But in early October 2013, Pearson confirmed his knowledge that the Pay Apps did not accurately reflect the progress of the work. On October 7, 2013, Pearson e-mailed Suiter to express concerns over numerous discrepancies between the represented progress in Pay App 12 and the actual work completed.[205] Among other things, Pearson questioned a $5,000 charge for windows, stating "We have already paid almost 84% on the windows. But, to date no windows have been installed in the

---

[202] Dkt. 82-30.

[203] Dkt. 200 at 2.

[204] Dkt. 200 at 3.

[205] Dkt. 82-24.

81

house."[206]  About an hour later, Suiter replied that, "The cost of the windows is $115,591.00. The balance is the installation which has already begun. The cost to install all the window frames that are now in is $16,000.00. We will bill the balance of the windows after installation."[207] He further said that, "even if you feel that the billing is too aggressive you are not addressing the additional work which we view as a trade-off for this."[208] Suiter threatened to stop work and make a claim for delay damages. Later, as is noted above, Canaan Construction permanently stopped work and closed its doors.[209]

I discuss section 523(a)(2) in section IV.B.1(b) above.

Suiter admits that the Pay Apps falsely represented the extent to which the window work was completed, and that he knew those statements were false. Pearson is entitled to partial summary judgment on those points.

Suiter also testifies that the Pearsons knew that the Pay Apps were false in this respect "through a combination of emails, oral discussions, and course of dealing (i.e. payments) . . . ."[210] On a motion for summary judgment, I must accept this testimony

---

[206] *Id.*

[207] *Id.* at 3-5.

[208] *Id.*

[209] Dkt. 82-6 at 3.

[210] Dkt. 200 at 2.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 86 of 98

as true without evaluating its credibility. Based on this testimony, the trier of fact could find that Suiter did not intend to deceive Pearson or that Pearson did not justifiably rely on the statements in the Pay Apps. Therefore, summary judgment on those points must be denied.

In addition, Pearson's own communications show that, at least by October 2013, he suspected that the Pay Apps were false. He could not have justifiably relied on the Pay Apps when he paid Pay App 12.

Summary judgment on the issue of damages must also be denied. If the court determines that Pearson breached the contract and owes money to Canaan Construction, the court might determine that Suiter's misrepresentations did not cause any net injury to Pearson.

I will grant Pearson's motion for partial summary judgment in part, determine that the statements in the Pay Apps about the progress of the window work were false and that Suiter knew they were false, and deny the motion in all other respects.

U.S. Bankruptcy Court - Hawaii    #15-90020    Dkt # 449    Filed  11/15/16    Page 87 of 98

**K.** **Pearson's Motion for Partial Summary Judgment on Count 35 (The Cabinet Claims).**

Pearson filed a motion for partial summary judgment on count 35, which alleges that Suiter committed common law fraud when he, on behalf of Canaan Construction, charged Pearson for cabinet work that was never done.[211]

The contract specifications required Canaan to fabricate and install a "complete cabinet package."[212] The cabinets were to be built at Canaan Construction's shop (which was located in a warehouse controlled by 1122 Makepono) and then installed in the home.[213]

Section A.3.15.1 of the contract provides that Canaan Construction "shall provide [Pearson] access to the Work in preparation and progress wherever located."[214]

Suiter, on behalf of Canaan Construction, delivered to Pearson several Pay Apps representing that portions of the cabinet work had been completed.[215]

| Pay App | Date | Cabinet Work Done During Period | Cumulative Cabinet Work Done |
|---------|---------|-------------------------------|------------------------------|
| 5 | 2/21/13 | $25,612 | $25,612 |

---

[211] Dkt. 148.

[212] Dkt. 82-4 at 12-13.

[213] Dkt. 149-1 at 4.

[214] Dkt. 149-4 at 7.

[215] Dkt. 149-10; 149-12; 149-14; 149-16; and 149-18.

U.S. Bankruptcy Court - Hawaii #15-90020 Dkt # 449 Filed 11/15/16 Page 88 of 98

| | | | |
|---|---|---|---|
| 7 | 4/24/13 | $25,000 | $50,612 |
| 10 | 7/22/13 | $10,000 | $60,612 |
| 11 | 8/23/13 | $13,000 | $73,612 |
| 13 | 10/21/13 | $8,150 | $81,762 |

Pearson paid the amounts requested in Pay App 5, 7, 10, 11, and 13.[216]

Each Pay App represented that the total scheduled value of the complete cabinet package was $90,000. Thus, Pay App 13 represented that Canaan Construction had completed slightly more than 90% of the work on the cabinet package.[217]

This representation was false. The cabinets were never installed at the project or delivered to Pearson. It is not clear that any cabinets were built; Pearson repeatedly sought permission to inspect the cabinets 1122 Makepono's warehouse (where Canaan Construction had its shop), but Suiter consistently refused. Suiter says he cannot recall these conversations and that Pearson could not have entered the warehouse due to OSHA and safety regulations.[218] But he does not deny Pearson's testimony, does not identify the regulations that precluded Pearson from entering the warehouse, does not explain why he could not have satisfied those regulations by (for example) lending

---

[216] Dkt. 149-9; 149-11; 149-13; 149-15; and 149-19.

[217] Dkt. 149-18.

[218] Dkt. 166-1 at 5.

85

Pearson appropriate protective equipment, and completely ignores the provision of the contract entitling Pearson to have "access to the Work in preparation and progress wherever located."[219]

As is noted above, Suiter admits that, "The Pay Apps did not accurately reflect the work progress as of the date of each Pay App due to the numerous delays to the project by the Pearsons and not making timely approvals and repeated requests for free work and numerous upgrades to the project."[220] Again, Suiter does not explain how the Pearsons' alleged delays caused him to make false statements on the Pay Apps.

Suiter also says that the Pearsons were aware that the Pay Apps were not accurate and that "the Pay Apps would bill in advance for work not yet then completed."[221] Pearson denies this, but, as I explain in the preceding section, Pearson confirmed his knowledge in early October 2013 that the Pay Apps did not accurately reflect the progress of the work.

 The analysis of count 35 as the same as count 21, discussed in the preceding section.

I will grant Pearson's motion for partial summary judgment in part, determine that the statements in the Pay Apps about the progress of the cabinet work were false

---

[219] Dkt. 149-4 at 7.

[220] Dkt. 200 at 2.

[221] Dkt. 200 at 3.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 90 of 98

and that Suiter knew they were false, and deny the motion in all other respects.

L.   **Motion for Partial Summary Judgment on Count 33 of Third Amended Complaint (The PV Claims).**

Pearson filed a motion for partial summary judgment on count 33 of the third amended complaint. This count alleges that Canaan Construction and Suiter fraudulently billed and collected for a photovoltaic ("PV") system that Canaan Construction did not install in Pearson's construction project, and that Suiter's liability is nondischargeable under section 523(a)(2)(A).

It is undisputed that:[222]

(1) Canaan Construction and Pearson entered into Change Order 2, pursuant to which Canaan Construction agreed to provide a PV system for $58,950;

(2) Pearson paid a 50% deposit of $29,475;

(3) Canaan Construction and Suiter presented payment applications to Pearson that represented that $45,075 of the PV work was done and Pearson paid the amount demanded; and

(4) Other than steel mounting brackets on the roof to hold the PV panels and conduit routed to the roof, Canaan Construction did not complete any part of the PV system or make any PV equipment available to Pearson.

The following facts are disputed:

---

[222] Dk. 329, 371.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 91 of 98

(1) Canaan Construction and Suiter claim that Pearson agreed and understood that the pay applications did not reflect the actual progress of the job because Canaan Construction was "billing ahead" on account of extra work requested by Pearson. Pearson denies that there was any such agreement.

(2) Canaan Construction and Suiter claim that Canaan Construction had begun work on design and permitting of the PV system and had installed the steel roof brackets to hold the PV panels.[223] Canaan Construction and Suiter do not describe the value of the work that was actually done. Pearson claims, and Canaan Construction and Suiter do not deny, that Canaan Construction did not pay anything to the supplier of the PV equipment.[224]

(3) Pearson argues that the roof mounting brackets were defective, that Canaan Construction had cracked some of the roof tiles, and that he had to pay $7,068 for corrective work.[225] Canaan Construction and Suiter claim that the additional charges are attributable to Pearson's choice, after Canaan Construction stopped work, to install a smaller PV system from a different manufacturer. [226]

I will grant Pearson's motion for partial summary judgment in part, to the same

---

[223] Dkt. 371.

[224] Dkt. 329 at 5, 371.

[225] Dkt. 329-3 at 10.

[226] Dkt. 371 at 4-5.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 92 of 98

extent and for the same reasons discussed in section IV.J and K above regarding the cabinet and window claims.

### M. Motion for Partial Summary Judgment on Counts 47, 54, & 59 of Third Amended Complaint (The T&G, Gypboard, and Finished Carpentry Claims).

Pearson filed a motion for partial summary judgment on counts 47, 54, and 59 of the third amended complaint. Those counts allege that Canaan Construction and Suiter fraudulently billed and collected for T&G, gypboard, and finished carpentry work on Pearson's construction project, that Canaan Construction did not actually perform for which Pearson paid, and that Suiter's liability is not dischargeable under section 523(a)(2)(A).

It is undisputed that:[227]

(1) Canaan Construction and Pearson entered into a construction contract that provided that Pearson would pay for the work based on pay applications reflecting the value of the work completed and stored to date.

(2) Canaan Construction and Suiter presented payment applications to Pearson that represented that $42,650 of the finished carpentry work, $36,265 of the T&G work, and $14,001 of the gypboard work had been completed;

(3) Pearson paid the amount demanded; and

---

[227] Dkt. 351, 370.

89

(4) Canaan Construction did not complete all of the finished carpentry, T&G, or gypboard work.

The following facts are disputed:

(1) Canaan Construction and Suiter claim that Pearson agreed and understood that the pay applications did not reflect the actual progress of the job because Canaan Construction was "billing ahead" on account of extra work requested by Pearson. Pearson denies that there was any such agreement.

(2) The extent of completion of the finished carpentry, T&G, and gypboard work is disputed.[228]

I will grant Pearson's motion for partial summary judgment in part, to the same extent and for the same reasons discussed in section IV.J and K above respecting the cabinet and window claims.

### N.  Motion for Partial Summary Judgment on Counts 12 and 19 (The Stone Claims)

Pearson filed a motion for partial summary judgment on counts 12 and 19 of the third amended complaint. Those counts allege that Canaan Construction and Suiter fraudulently billed and collected for stone building materials that Canaan Construction did not even purchase, let alone install in Pearson's construction project, and that Suiter's liability is nondischargeable under section 523(a)(2)(A).

---

[228] Dkt. 370 at 3.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 94 of 98

The construction contract valued the total work on stone floors, stone counters, and the pool deck at $172,800.

Canaan Construction and Suiter do not deny that several pay applications they presented to Pearson stated that $123,304.62 of the stone work had been completed, and that Pearson paid that amount.[229]

Pearson claims that Canaan Construction did not install any stone on the job site before Canaan Construction stopped work. Canaan Construction and Suiter do not deny this assertion.[230]

Suiter claims that Canaan Construction paid a supplier $39,965 as a deposit against the purchase price for the stone and to compensate the supplier for storing the stone until needed.[231] Assuming for purposes of this motion that this is true, this means that Canaan Construction received $83,339.62 for stone that was never installed and that Canaan Construction did not purchase or pay for. Therefore, the representation in the pay applications about the status of completion of the stone work was false.

Suiter claims (and Pearson denies) that Pearson knew that the pay applications were false, and that Canaan Construction was "billing ahead" for extra work requested

---

[229] Dkt. 354 at 9-10, 379 at 4.

[230] Dkt. 354, 379.

[231] Dkt. 379 at 3.

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 95 of 98

by Pearson.

I will grant Pearson's motion for partial summary judgment in part, to the same extent and for the same reasons discussed in sections IV.J and K above with respect to the cabinet and window claims.

## V.    CONCLUSION

1.    Pearson's claims in the second amended complaint to avoid transfers and for alter ego recovery should be dismissed with prejudice and without leave to amend. *See* section IV.A.3 and 4 above. Those counts are core proceedings against Suiter and noncore proceedings against the other defendants.  In the interest of simplicity, I will recommend this disposition, subject to the district court's de novo review.

2.    Count 123 and the portion of count 122 relating to "weekend workers" should be dismissed with prejudice and without leave to amend. *See* section IV.B.1(a) above. Like the claims described in paragraph 1 above, those counts are hybrid core/noncore proceedings.  Therefore, I will recommend this disposition, subject to the district court's de novo review.

3.    The portion of count 123 that alleges that Suiter's alleged failures to disclose that Canaan Construction was insolvent and financially unable to perform the contract result in nondischargeable liability should be dismissed with prejudice and without leave to amend. *See* section IV.A.7 and IV.B.1(b) above. This is a core

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 96 of 98

proceeding which is subject to district court review under the usual appellate standard.

4.      I recommend that the district court dismiss counts 1 and 5 of Canaan Construction's counterclaim and third party complaint, with prejudice and without leave to amend. *See* sections IV.C.1 above. This is a noncore proceeding.

5.      I recommend that the district court enter partial summary judgment in favor of the Pearsons on counts 4 of Canaan Construction's counterclaim and third party complaint, with prejudice and without leave to amend. *See* section IV.C.2 above. This is a noncore proceeding.

6.      I recommend that the district court grant partial summary judgment in favor of Pearson on counts 3, 4, and 5 of the third amended complaint as set forth in section IV.D above. This is a hybrid core/noncore proceeding.

7.      I recommend that the district court grant partial summary judgment in favor of Pearson on counts 2 and 3 of the counterclaim and determine that the amounts claimed in proposed Change Order 9 may not be included in Canaan Construction's maximum quantum meruit recovery under *Hiraga v. Baldonado*. *See* section IV.E above. If the district court does not accept this recommendation in full, I recommend that the district court limit Canaan Construction's recovery as set forth in section IV.E.3 above. This is a noncore proceeding.

8.      If the district court determines that Suiter owes money to Pearson,

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed  11/15/16   Page 97 of 98

Suiter's discharge in bankruptcy should be denied under section 727(a)(2)(A). *See* section IV.G.1 above. This is a core proceeding. This decision makes it unnecessary to consider whether Suiter's discharge must be denied under other provisions of section 727(a) or whether Pearson's claims are dischargeable under section 523. If the district court reverses my decision under section 727(a)(2)(A), my decisions regarding the claims under section 523 and the other provisions of section 727 are set forth above.

9.    I recommend that the district court deny all other motions to dismiss and for partial summary judgment.

END OF RECOMMENDATION

U.S. Bankruptcy Court - Hawaii   #15-90020   Dkt # 449   Filed 11/15/16   Page 98 of 98